UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GAS DRAWLS, LLC,<br><br>     Plaintiff,<br><br>v.<br><br>WHALECO, INC. et al.,<br><br>     Defendants. | Case No. 2:25-cv-07425-SB-BFM<br><br>ORDER GRANTING DEFENDANT'S MOTION TO DISMISS [29] |

     Plaintiff Gas Drawls, LLC, brings this action for trademark infringement against Defendant Whaleco, Inc.—doing business as Temu—arising from products sold through Temu's e-commerce website. Temu moves to dismiss Plaintiff's first amended complaint (FAC). The motion is granted with leave to amend.

I.

     Gas Drawls owns the music library and intellectual property of rapper Daniel Dumile Thompson, better known as MF DOOM. Dkt. No. 25 ¶ 7. Gas Drawls claims ownership of 11 registered and pending trademarks, including "MF DOOM," "DOOM" (in a stylized bubble design), "GAS DRAWLS," and an illustrated depiction of a mask MF DOOM frequently wore during performances. *Id.* Plaintiff sells products bearing the marks and uses them to market MF DOOM's music. *Id.* ¶ 18, 22–23. Below are examples of the marks:

1



Whaleco operates the online retail platform Temu.com. *Id.* ¶ 5, 12. Plaintiff alleges that Temu manufactured, marketed, advertised, or sold numerous items on its platform featuring copies of its marks, as illustrated below:



Dkt. Nos. 25 ¶ 9, 45 ¶ 37.  Plaintiff claims that these infringing products have diverted trade, caused lost profits, and created a false association between MF DOOM and Temu that devalues the marks.  Dkt. No. 25 ¶ 13.

Temu disclaims liability, insisting that it is merely an "online sales platform" or "transactional intermediary" that hosts listings from third-party sellers identified on each product page.  Plaintiff, on the other hand, alleges that Temu is not a passive marketplace but instead functions as a "vertically integrated manufacturer and retailer" that exercises control of "every aspect of its business," including sourcing, design, manufacturing, pricing, marketing, and shipping of products.  *Id.* ¶ 8, 18.  The FAC also alleges that Temu's business practices are predatory and unethical.  *Id.* at 2–3.

The FAC asserts claims for:  (1) common law trademark infringement; (2) violation of 15 U.S.C. § 1114; (3) unfair competition and false endorsement under 15 U.S.C. § 1125(a); (4) violations of California Business and Professions Code §§17200, et seq; (5) common law unfair competition; and (6) violation of California Civil Code § 3344.1.[1]  Temu now moves to dismiss all claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure and requests that the Court strike purportedly immaterial allegations under Rule 12(f).

II.

To survive a Rule 12(b)(6) motion, a complaint must plead enough facts to state a facially plausible claim—i.e., facts permitting a reasonable inference of liability.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A reviewing court accepts well-pleaded factual allegations as true but disregards legal conclusions and mere recitals of the elements of a claim.  *Id.* (quoting *Twombly*, 550 U.S. at 555).  If the well-pleaded factual allegations suggest only "the possibility of misconduct," the complaint fails to show an entitlement to relief.  *Id.*

---

[1] After the Rule 12(b)(6) motion was filed, Plaintiff voluntarily dismissed the § 3344.1 claim.  Dkt. No. 31.  Plaintiff and its counsel are admonished for failing to agree to dismiss this claim during the meet and confer.  Temu's request for sanctions under Rule 11 is denied.  *See* Fed. R. Civ. P. 11(c)(2) (noting that a sanctions motion "must be made separately from any other motion").

III.

Plaintiff brings claims for common-law trademark infringement, trademark infringement under the Lanham Act (15 U.S.C. § 1114), statutory and common-law unfair competition, and false endorsement under the Lanham Act (15 U.S.C. § 1125(a)). Like the parties, the Court considers these claims together because their elements are similar. To prevail on its trademark-infringement claims, Plaintiff must demonstrate: (1) use and valid ownership of the trademarks, (2) that Temu used the same or similar marks in commerce, and (3) a likelihood of confusion. *Levi Strauss & Co. v. Blue Bell, Inc.,* 778 F.2d 1352, 1353 n.1, 1354 (9th. Cir. 1985). Temu does not dispute Plaintiff's use and valid ownership of the marks and challenges only the second and third elements.[2] Temu also asserts that it is immune from liability on Plaintiff's state-law claims because of § 230 of the Communications Decency Act.

A.

The Court first addresses the second element of the trademark-infringement claims—whether Temu used the allegedly infringing marks in commerce. A defendant may be liable directly or indirectly for infringement. *See Atari Interactive, Inc. v. Redbubble, Inc.*, 515 F. Supp. 3d 1089 (N.D. Cal. 2021), *aff'd in part*, No. 21-17062, 2023 WL 4704891 (9th Cir. July 24, 2023). The complaint fails to state a claim under both theories.

1.

A defendant may be directly liable if it personally uses infringing marks in connection with the sale, distribution, or advertising of goods or services. *Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672 (9th Cir. 2005). None of the allegations in the FAC supports a direct-infringement claim.

First, Plaintiff alleges that Temu used the marks by selling infringing products on its platform, asserting that Temu sources products from the sellers

---

[2] As Temu correctly argues, Plaintiff can only proceed under § 1114 on claims brought for infringement of registered trademarks. Dkt. No. 29-1 at 13; *see Brookfield Commc'ns., Inc. v. W. Coast Entmt Corp.*, 174 F.3d 1036, 1046 n.8 (9th Cir. 1999) (explaining that § 1114 protects only registered marks, while § 1125 protects both registered and unregistered marks, with the analysis under the two provisions being "oftentimes identical").

listed on the product pages and directs manufacturing, shipping, and pricing. Dkt. No. 26 at 6. Plaintiff bases this on pricing patterns on Temu.com that purportedly reflect Temu's control over product prices and on an image of an unspecified package with the label "Ship From: YC-Log. for Temu." But Plaintiff cites no authority holding that price control renders an online marketplace a "seller" liable for direct infringement, and the presence of Temu's name on packaging—which is consistent with a fulfillment function—does not support an inference that Temu is the seller of any product, let alone the products at issue here. Dkt. No. 26-2 at 1; *see BMW of N. Am., LLC v. Win.It Am., Inc.*, No. 17-CV-8826PSG, 2018 WL 7458525, at *3 (C.D. Cal. Mar. 14, 2018) (noting that facilitating sales and placing shipping labels on infringing goods are insufficient to render a defendant liable for direct infringement); *Milo & Gabby, LLC v. Amazon.com, Inc.*, 12 F. Supp. 3d 1341, 1345, 1352–53 (W.D. Wash. 2014) (dismissing infringement claims premised on retail platform's fulfillment of orders from third-party sellers). Indeed, the FAC relies on two sources that seemingly undercut Plaintiff's position—i.e., federal and state enforcement actions describing Temu as a marketplace that "facilitates transactions" between consumers and "Chinese merchants" or that fulfills orders from inventory supplied by "third party sellers." Dkt. No. 26-2 at 1, 26-3 ¶ 28. Thus, Plaintiff has not alleged "enough facts" to state a claim for direct infringement "that is plausible on its face." *Twombly,* 550 U.S. 544, 547 (2007).

Plaintiff attempts to excuse its pleading deficiencies and move beyond the pleading stage by asserting that Temu exclusively controls information about its seller relationships. Dkt. No. 30 at 1. But Temu's website undisputedly identifies the seller for each product, and Plaintiff had access to that information when it located the allegedly infringing products.[3] Yet the FAC identifies none of the sellers and alleges no facts suggesting that any are owned or controlled by Temu.[4] These omissions further render the factual allegations insufficient to plausibly infer that Temu is the seller of the allegedly infringing goods.

---

[3] Temu also states in its reply that it provided Plaintiff with a list of the third-party sellers responsible for the allegedly infringing listings. Dkt. No. 32 at 4.

[4] Plaintiff relies on a Federal Trade Commission action accusing Temu of inadequate seller disclosures to claim that Temu obscures its seller relationships. But that action concerns only the accessibility of seller information, not the nature of Temu's relationships with sellers. Dkt. No. 26 Ex. 1 at 1, 3.

Second, Plaintiff alleges that Temu is liable for creating infringing advertisements, but this allegation lacks any specificity—failing even to identify the infringing advertisement(s). Even if a plaintiff need not catalog every instance of infringement, it must plead at least some representative acts. *See Public Free Will Corp. v. Verizon Commc'ns Inc.*, 15-CV-6354, 2017 WL 1047330, at *4 (E.D.N.Y. Mar. 17, 2017) (finding no "use" of trademark where plaintiff failed to provide "any facts, details, or descriptions" of defendant's alleged infringing advertisement or provide a copy of it); *cf. Microsoft Corp. v. My Choice Software, LLC*, No. 16-CV-2187-DOC, 2017 WL 5643210, at *4 (C.D. Cal. Oct. 10, 2017) (finding that allegations of "some specific instances of infringement are sufficient to put a defendant on notice of the claims against it"). Instead, Plaintiff relies solely on a complaint filed by the Nebraska Attorney General against Temu that generally alleges that "numerous ads being run by Temu . . . infringe well-known brands." Dkt. No. 26-3 at 78. Such references to alleged infringement of other trademarks do not plausibly support a claim that Temu published advertisements infringing Plaintiff's marks. *See, e.g., In re Mosaic LLM Litig.*, No. 24-CV-01451, 2025 WL 2402677, at *3 (N.D. Cal. Aug. 19, 2025) ("A plaintiff cannot use one alleged instance of infringement to simply presume that the same party committed more infringement."); *Menzel v. Scholastic, Inc.*, No. 17-CV-05499, 2018 WL 1400386 (N.D. Cal. Mar. 19, 2018) (concluding that allegations that defendant was sued for infringement by other parties did not plausibly allege that defendant committed the same violations with respect to plaintiff).

Third, Plaintiff contends that Temu is directly liable because it knowingly offers "MF DOOM" as a search keyword that triggers the display of the infringing listings. But Plaintiff does not explain how Temu "offered" the keyword, and the FAC itself states that Plaintiff's counsel found the listings by typing "MF DOOM" into the search bar. Dkt. No. 26 ¶ 16. It is therefore unclear that Temu did anything other than provide a search tool for its platform. *See Perfect 10, Inc. v. Giganews, Inc.*, No. 11-CV-07098 AHM, 2013 WL 2109963, at *14 (C.D. Cal. Mar. 8, 2013), *aff'd*, 847 F.3d 657 (9th Cir. 2017) (holding that "merely offering a search function that allows third parties to search for images using Plaintiff's marks as search terms" is not "use" of the marks in commerce).[5]

---

[5] It its opposition, Plaintiff asserts that Temu used the mark "MF DOOM" in Temu.com's metadata but does not explain how it did so or how this "purposefully direct[ed] search engines to landing pages" that sell the infringing goods. Dkt. No. 30 at 5. In any event, the Court need not consider allegations first raised in

In sum, Plaintiff fails to state a claim for direct trademark infringement because it does not offer "enough factual matter (taken as true) to suggest that" Temu sells or advertises the allegedly infringing products. *Twombly*, 550 U.S. at 555–56 (stating that to survive a Rule 12(b)(6) motion, the "[f]actual allegations must be enough to raise a right to relief above the speculative level."); *see Shenzhen Kangmingcheng Tech. Co. v. PDD Holdings Inc.*, No. 1:23-CV-02697, 2024 WL 5221272 (N.D. Ill. Dec. 23, 2024) (dismissing similar claims because the allegations that "Temu sellers are only responsible for the supply and delivery to Temu's warehouse, and the rest of the pricing, selling, marketing, logistics and distribution, and after-sales are all taken care of by Temu" were insufficient to plausibly state a claim for direct infringement without supporting facts); *MaiBo v. WhaleCo, Inc.*, No. 23-CV-2793, 2024 WL 1859730 (N.D. Ill. Apr. 29, 2024) (similarly dismissing claims against Temu).

2.

A defendant may be liable for infringement by third parties under theories of vicarious or contributory infringement. Vicarious liability occurs where "the defendant and the infringer have an apparent or actual partnership . . . or exercise joint ownership or control over the infringing product." *Perfect 10, Inc. v. Visa Intern. Service Ass'n,* 494 F.3d 788, 807 (9th Cir. 2007). Contributory infringement occurs where a service provider "continue[s] to supply its services to one who it knew or had reason to know was engaging in trademark infringement" and has "direct control and monitoring of the instrumentality used by a third party to infringe." *Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*, 658 F.3d 936, 942 (9th Cir. 2011) (cleaned up).

Plaintiff's allegations that Temu directs the manufacture, shipping, and pricing of infringing products can be read as asserting indirect infringement.[6] *See*

---

Plaintiff's opposition. *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) ("Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion.").

[6] Temu opposes Plaintiff's request for leave to amend to add more specific contributory-infringement allegations, arguing they would contradict the FAC's assertion that Temu is the seller of the infringing products. But a plaintiff may plead direct and indirect theories in the alternative, *see, e.g.*, *Atari Interactive, Inc. v. Redbubble, Inc.*, 515 F. Supp. 3d 1089, 1101–10, and the FAC's allegations about Temu's control over sellers do not foreclose contributory infringement.

*Free Kick Master LLC v. Apple Inc.*, No. 15-CV-3403, 2016 WL 777916 (N.D. Cal. Feb. 29, 2016) (treating allegations that defendant controlled, monitored, and selected third-party products on its platform as contributory-infringement claims). The FAC, however, fails to state a plausible claim of indirect infringement. As discussed, Plaintiff alleges no facts supporting an inference of joint ownership or control over the infringing products or suggesting that Temu's role is anything other than a transactional intermediary and fulfiller. Nor does the FAC allege that Temu knew, or had reason to know, that any listed seller was infringing Plaintiff's marks. *See, e.g., Johnson v. Meta Platforms, Inc.*, No. 22-CV-05691, 2023 WL 5021784 (N.D. Cal. Aug. 4, 2023) (dismissing claims of contributory infringement where plaintiff failed to allege facts showing that defendant knew its platform was used to display infringing marks).[7]

\* \* \*

Because Plaintiff fails to plausibly allege either direct or indirect use of the marks in commerce, its claims for common-law trademark infringement, trademark infringement under § 1114, California's Business and Professions Code, common-law unfair competition, and false endorsement under § 1125(a) must be dismissed.[8]

B.

Temu separately argues that Plaintiff's state-law claims are barred because, as an interactive service provider, it is immune under § 230 of the Communications Decency Act. 47 U.S.C. § 230.

Section 230 shields interactive service providers from liability, including under state intellectual-property laws, for content created by third parties. *Perfect*

---

[7] Plaintiff does not dispute that Temu removed all allegedly infringing listings upon receiving notice from Plaintiff. *See Ligeri v. Amazon.com Servs. LLC*, No. 2:25-CV-00764, 2025 WL 2161497, at \*10 (W.D. Wash. July 30, 2025), *reconsideration denied,* No. 2:25-CV-00764, 2025 WL 2212595 (W.D. Wash. Aug. 4, 2025) (dismissing claims for contributory infringement where complaint did not allege that defendant "knew of any specific instances of infringement and chose not to act").

[8] Because the Court concludes that Plaintiff has failed to plead Temu's use of the marks in commerce, it need not address the parties' arguments on the likelihood of confusion element.

*10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1118–19 (9th Cir. 2007).[9] The term "interactive service providers" has been interpreted to include a wide range of cyberspace services, including online retailers. *See, e.g., Gentry v. eBay, Inc.,* 99 Cal. App. 4th 816, 831 & n. 7 (2002) (on-line auction website is an interactive service provider); *Schneider v. Amazon.com* 108 Wash. App. 454, 31 40–41 (2001) (on-line bookstore Amazon.com is an interactive service provider). By contrast, an "information content provider"—an entity "responsible . . . for the creation or development of information provided through the Internet"—is not entitled to § 230 immunity. *See* 47 U.S.C. § 230 (c)(1), (f)(3).

Plaintiff characterizes Temu as an information content provider on the ground that it is "responsible" for the product listings and allegedly alters and advertises them. Dkt. No. 30 at 12. These conclusory assertions do not plausibly allege that Temu is a content provider for the reasons discussed above—i.e., Plaintiff provides no factual basis to infer that Temu materially contributed to the alleged infringement. *See Evans v. Hewlett-Packard Co.*, No. 13-CV-02477, 2013 WL 5594717 (N.D. Cal. Oct. 10, 2013) (finding allegations that defendants "created, designed, developed and transformed" advertisement content and "assisted in the development, distribution, naming, endorsement and sale" of the product too conclusory); *Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC,* 521 F.3d 1157, 1162 (9th Cir. 2008) (defining "development" to require material contribution to the alleged unlawfulness).

Thus, the state-law intellectual property claims, as alleged, are barred under § 230.[10]

### IV.

In addition to its motion to dismiss, Temu moves to strike certain portions of the FAC. Under Rule 12(f), courts may "strike from a pleading . . . any

---

[9] Relying on out-of-circuit authority, Plaintiff argues that § 230's immunity does not extend to state intellectual-property laws, but the Ninth Circuit has rejected this position. *CCBill*, 488 F.3d at 1118–19 (concluding that § 230 provides immunity for state intellectual-property laws); *see Long v. Dorset*, 854 F. App'x 861, 865 n.4 (9th Cir. 2021) (applying *CCBill* and holding that § 230 immunity extends to "state laws protecting intellectual property").

[10] The Court therefore does not need to reach Temu's arguments that Plaintiff's statutory unfair competition and UCL claims are otherwise insufficiently pled. Dkt. No. 29-1 at 17–20.

redundant, immaterial, impertinent, or scandalous matter." *Vogel v. Linden Optometry APC*, 2:13-CV-00295-GAF, 2013 WL 1831686, at *2 (C.D. Cal. Apr. 30, 2013); *see Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (providing that decision to grant a motion to strike is in district court's discretion). Temu moves to strike the introduction section of the FAC—which accuses it of unethical business practices—arguing it is irrelevant, inflammatory, and serves only to disparage and prejudice it. It also moves to strike accusations that Temu sells products "endorsing homophobia [and] inciting violence" as irrelevant to Plaintiff's claims and similarly prejudicial.

The challenged material is potentially relevant to Plaintiff's claims because it asserts that its marks are devalued by association with Temu when they appear on Temu's platform. *See Wailua Assocs. v. Aetna Casualty and Surety Co.*, 183 F.R.D. 550, 553–54 (D. Haw. 1998) ("Matter will not be stricken from a pleading unless it is clear that it can have no possible bearing upon the subject matter of the litigation[.]"); *Multi Time Machine, Inc. v. Amazon.com, Inc.*, 792 F.3d 1070, 1073 (9th Cir. 2015) ("Trademark infringement [] occurs when the trademark's use in commerce is likely to cause confusion as to the affiliation, association, or approval of the trademark holder with the trademark user."). Additionally, Temu fails to explain how the challenged portions of the FAC are materially prejudicial, especially when they are drawn from public sources or discuss examples of products on its platform. *See California Dep't of Toxic Substances Control v. Alco Pac., Inc.*, 217 F. Supp. 2d 1028 (C.D. Cal. 2002) (quoting *S.E.C. v. Sands*, 902 F. Supp. 1149 (C.D. Cal. 1995), *aff'd sub nom. S.E.C. v. First Pac. Bancorp*, 142 F.3d 1186 (9th Cir. 1998)) ("Given their disfavored status, courts often require 'a showing of prejudice by the moving party' before granting" motions to strike); *Lobaton v. City of San Diego*, No. 3:15-CV-1416, 2015 WL 7864186, at *2 (S.D. Cal. 2015) (stating that, for a motion to strike, "[i]t is not enough that the matter offends the sensibilities of the objecting party . . . if the challenged allegations . . . are relevant to the action").

Accordingly, the Court denies the motion to strike.

V.

For the foregoing reasons, the Court grants Temu's motion to dismiss and denies its motion to strike.

"The court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). Leave may be denied, however, for reasons such as

10

"repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Because this is the first ruling on the merits of Plaintiff's claims, and given the liberal policy favoring amendments, the Court will grant Plaintiff an opportunity to amend any claims if it has a good-faith factual and legal basis to do so. *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990). Plaintiff should not expect another opportunity to amend to add allegations that could have been raised in the second amended complaint (SAC). Plaintiff shall file its SAC by December 19, 2025. Failure to timely file an SAC will result in the dismissal of Plaintiff's claims with prejudice.

Date: December 5, 2025

                                                   Stanley Blumenfeld, Jr.
                                                   United States District Judge