Matthew S. Bellinger (SBN 222,228)
matt.bellinger@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR LLP
2040 Main Street, 14th Floor
Irvine, CA 92614
Phone: (949) 760-0404

Nicholas A. Belair (SBN 295,380)
nick.belair@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR LLP
333 Bush St., 21st Fl.
San Francisco, CA 94104
Phone: (415) 217-8399

Hans L. Mayer (SBN 291,998)
hans.mayer@knobbe.com
Melis Tirhi (SBN 351,604)
melis.tirhi@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR LLP
1925 Century Park East, Suite 400
Los Angeles, CA 90067
Phone: (310) 551-3450

*Attorneys for Defendant,*
Whaleco, Inc., d/b/a Temu

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| GAS DRAWLS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>WHALECO, INC., D/B/A TEMU,<br><br>Defendant. | Case No. 2:25−cv−07425-SB (BFMx)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT AND MOTION TO STIKE**<br><br>Hearing Date: January 30, 2026<br>Time: 8:30 a.m.<br>Courtroom: 6C<br>Judge: Hon. Stanley Blumenfeld Jr. |

# TABLE OF CONTENTS

**Page No.**

I.  INTRODUCTION .................................................................................................. 1

II.  FACTUAL BACKGROUND .............................................................................. 2

III.  LEGAL STANDARD .......................................................................................... 3

IV.  ARGUMENT ........................................................................................................ 4

    A.  Gas Drawls Fails to State a Claim for Direct Trademark Infringement ........................................................................................ 4

        1.  Gas Drawls Fails to Plausibly Plead Use in Commerce ............................................................................. 4

            a.  The Court Should Not Accept Gas Drawls' Contradictory Allegations ....................................... 4

            b.  The SAC's New Sources and Allegations Do Not Show that Temu Used Gas Drawls' Marks in Commerce ............................................. 5

            c.  Temu Is an Online Sales Platform and Is Not Liable for any Alleged Infringement ............... 13

            d.  Gas Drawls' Remaining Allegations are Conclusory and Devoid of Factual Support ............ 14

        2.  Gas Drawls Fails to Plausibly Plead a Likelihood of Confusion .................................................................. 16

    B.  Gas Drawls Fails to State a Claim for Contributory Trademark Infringement ............................................................... 17

    C.  Gas Drawls Fails to State a Claim for Inducing Trademark Infringement ............................................................... 19

    D.  Gas Drawls Fails to State a Claim for Vicarious Trademark Infringement ............................................................... 19

    E.  Gas Drawls Fails to State a Claim for Unfair Competition ........................................................................................ 20

        1.  Gas Drawls' Statutory Unfair Competition Claim Fails for the Same Reasons as its Trademark Infringement Claims ......................................................... 20

# TABLE OF CONTENTS
### (*cont'd*)

**Page No.**

        2.     Gas Drawls Fails to Plausibly Plead a Common
              Law Unfair Competition Claim............................................21

   F.    The Communications Decency Act (47 U.S.C. § 230)
         Bars Gas Drawls' State Law Claims...............................22

   G.   Gas Drawls' Attempt To Add PDDH To This Case Is
         Improper And Should Be Stricken................................23

V.    CONCLUSION ........................................................................24

# TABLE OF AUTHORITIES

**Page No(s).**

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ...............................................................3, 4, 14, 17

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) ...........................................................................3, 4

*Bosley Med. Inst., Inc. v. Kremer,*
   403 F.3d 672 (9th Cir. 2005)...................................................................4

*Bragg Live Food Prods., LLC v. Nat'l Fruit Prod. Co.,*
   2022 WL 3574423 (C.D. Cal. July 22, 2022) ............................................21

*Dang v. Fulkerson,*
   2017 WL 2311230 (C.D. Cal. May 25, 2017),
   judgment entered, 2017 WL 2294073 (C.D. Cal. May 25, 2017) ...............24

*Dr. Seuss Enters., L.P. v. ComicMix LLC,*
   300 F. Supp. 3d 1073 (S.D. Cal. 2017) .....................................................20

*Fraker v. Bayer Corp.,*
   2009 WL 5865687 (E.D. Cal. Oct. 6, 2009) ..............................................12

*Free Kick Master LLC v. Apple Inc.,*
   140 F. Supp. 3d 975 (N.D. Cal. 2015) .......................................................23

*Gibson Guitar Corp. v. Viacom Int'l Inc.,*
   2013 WL 2155309 (C.D. Cal. May 17, 2013),
   aff'd, 640 F. App'x 677 (9th Cir. 2016)....................................................19

*Gubanov v. Stanislaus Cnty.,*
   2015 WL 8666316 (E.D. Cal. Dec. 14, 2015)............................................24

*Inwood Labs., Inc. v. Ives Labs., Inc.,*
   456 U.S. 844 (1982) ...............................................................................19

*Korea Supply Co. v. Lockheed Martin Corp.,*
   29 Cal.4th 1134 (2023)............................................................................21

*Kwikset Corp. v. Superior Ct.,*
   51 Cal. 4th 310 (2011).............................................................................20

*MaiBo v. WhaleCo, Inc.,*
   2024 WL 1859730 (N.D. Ill. Apr. 29, 2024) .............................................16

*Marco Bicego S.P.A. v. Kantis,*
   2017 WL 2651985 (N.D. Cal. June 20, 2017) ............................................21

**TABLE OF AUTHORITIES**
*(cont'd)*

**Page No(s).**

*McGurr v. N. Face Apparel Corp.*,
   2021 WL 4706984 (C.D. Cal. Aug. 27, 2021) ................................................. 4

*In re McKesson HBOC, Inc. Sec. Litig.*,
   126 F. Supp. 2d 1248 (N.D. Cal. 2000) ........................................................ 11

*Menzel v. Scholastic, Inc.*
   2018 WL 1400386 (N.D. Cal. Mar. 19, 2018) .............................................. 10

*Milo & Gabby, LLC v. Amazon.com, Inc.*,
   12 F. Supp. 3d 1341 (W.D. Wash. 2014) ...................................................... 16

*Mophie, Inc. v. Shah*,
   2014 WL 10988339 (C.D. Cal. July 24, 2014) .............................................. 20

*In re Mosaic LLM Litig.*,
   2025 WL 2402677 (N.D. Cal. Aug. 19, 2025) ............................................... 10

*Perfect 10, Inc. v. CCBill LLC*,
   488 F.3d 1102 (9th Cir. 2007) ...................................................................... 22

*Perfect 10, Inc. v. Giganews, Inc.*,
   No. 11-CV-07098 AHM, 2013 WL 2109963
   (C.D. Cal. Mar. 8, 2013), *aff'd*, 847 F.3d 657 (9th Cir. 2017) .............. 14, 23

*Perfect 10, Inc. v. Visa Intern. Service Ass'n*,
   494 F.3d 788 (9th Cir. 2007) ........................................................................ 20

*Roffman v. Rebbl, Inc.*,
   653 F. Supp. 3d 723 (N.D. Cal. 2023) .......................................................... 21

*Routt v. Amazon.com, Inc.*,
   2012 WL 5993516 (W.D. Wash. Nov. 30, 2012) .......................................... 19

*Scott & Addison, LLC v. Pinkblush.com*,
   2021 WL 3579413 (C.D. Cal. Apr. 5, 2021) .................................................... 4

*Shenzhen Kangmingcheng Tech. Co. v. PDD Holdings Inc.*,
   2024 WL 5221272 (N.D. Ill. Dec. 23, 2024) .......................................... 13, 16

*Spy Optic, Inc. v. Alibaba.com, Inc.*,
   163 F. Supp. 3d 755 (C.D. Cal. 2015) .......................................................... 17

*Steckman v. Hart Brewing, Inc.*,
   143 F.3d 1293 (9th Cir. 1998) ................................................................. 4, 13

# TABLE OF AUTHORITIES
*(cont'd)*

**Page No(s).**

*Tiffany (NJ) Inc. v. eBay, Inc.*,
    600 F.3d 93 (2d Cir. 2010) .............................................................. 13

*Tre Milano, LLC v. Amazon.com, Inc.*,
    2012 WL 3594380 (Cal. Ct. App. Aug. 22, 2012) ....................................... 13

*Wong v. Arlo Techs., Inc.*,
    2019 WL 7834762 (N.D. Cal. Dec. 19, 2019) .................................................3

*Y.Y.G.M. SA v. Redbubble, Inc.*,
    2020 WL 3984528 (C.D. Cal. July 10, 2020) ............................................. 13

*Y.Y.G.M. SA v. Redbubble, Inc.*,
    75 F.4th 995 (9th Cir. 2023), cert. denied, 144 S. Ct. 824 (2024) ......... 18, 19

*YZ Prods., Inc. v. Redbubble, Inc.*,
    545 F. Supp. 3d 756 (N.D. Cal. 2021) ...................................................... 23

## OTHER AUTHORITIES

15 U.S.C. § 1114 ................................................................................ 4

15 U.S.C. § 1125 ................................................................................ 4

47 U.S.C. § 230 ........................................................................ 2, 22, 23

Whaleco, Inc. ("Temu") submits this Memorandum in support of its Motion to dismiss Gas Drawls, LLC's ("Gas Drawls") Second Amended Complaint (Dkt. 36, "SAC") and strike the addition of PDD Holdings, Inc. ("PDDH") as a named defendant.

## I.  INTRODUCTION

Now on its third pleading attempt, Gas Drawls adds several new allegations and external citations in an attempt to overcome the obvious deficiencies in the FAC.  The SAC still fails for the same fundamental reason as before and does not plausibly allege that Temu is, or could be, liable for the accused conduct.  Indeed, the SAC fails to address the pleading deficiencies noted in the Court's December 5 Order, given that virtually none of the new allegations or sources relate to the allegedly infringing products.  Dkt. 35. That is unsurprising because all the evidence available to Gas Drawls makes clear that third-parties were responsible for listing and selling every accused product.

Although the SAC adds new screenshots of product listings, as before, none of the blurry and misleadingly cropped screenshots identify *Temu* as the party that made or sold the products.  Rather, they all identify that *third-party sellers* were responsible for creating and selling the products.  And for the accused products, Temu has already provided the identities and addresses of the third-party sellers to Gas Drawls, which confirm that they are separate entities.  Further, the SAC's other new allegations and cited publications continue to fundamentally contradict Gas Drawls' infringement allegations (and are entirely irrelevant to the products at issue here).  They confirm that Temu acts as an intermediary, hosting the third-party product listings through the Temu.com platform, a role entirely at odds with Gas Drawls' theory of liability.

Gas Drawls also injects contributory, indirect, and vicarious trademark infringement claims into the case.  But those claims also fail.  Gas Drawls has not plausibly alleged that Temu has joint ownership or control over the accused

products rather than operating as a transactional intermediary and fulfiller. Nor does the SAC allege how or why Temu purportedly knew, or had reason to know, that any listed seller was infringing Gas Drawls' marks. Finally, Gas Drawls fails to plead any plausible facts to support its allegation that Temu intentionally induced third-party sellers to infringe its trademarks.

Gas Drawls' state law claims are similarly deficient for the same reasons as before, and are also subject to dismissal under 47 U.S.C. § 230 as the Court previously found.

Gas Drawls also improperly seeks to add PDDH to this case. But to do so, Gas Drawls should have filed a motion seeking leave to add PDDH as a party and should have filed that motion such that it could be heard by December 19, 2025. Dkt. 22. Gas Drawls failed to do so and failed to otherwise seek to amend the case schedule. The Court should thus strike the new identification of PDDH as a defendant in this case.

Finally, this lawsuit is particularly baseless considering that Temu removed the identified listings upon receiving notice. Instead of acknowledging that Temu has effectively prevented the posting of any further allegedly infringing listings, Gas Drawls baselessly accuses Temu of tracking its lawyers.

Because Gas Drawls' SAC fails to state any viable claims against Temu, the Court should dismiss the SAC in its entirety with prejudice.

## II. <u>FACTUAL BACKGROUND</u>

As supported by the sources cited in the SAC, Temu is an online retail sales platform that hosts product listings from third-party sellers on its platform. For example, as discussed in Temu's second motion to dismiss, Gas Drawls cites a Congressional Select Committee report, Nebraska state court complaint, and Massachusetts district court complaint, all of which broadly describe Temu as a marketplace that facilitates transactions between Americans and China-based

-2-

sellers.  SAC at 3, n.2–4[1]; *see also* Dkt. 35 at 5 n.4, 6.  Gas Drawls adds several sources to the SAC which are consistent with the foregoing.  For example, it cites an Arizona state court complaint which explains that Temu "facilitate[s] transactions between Arizona consumers and Chinese merchants."  SAC, Ex. 10, ¶ 42.  Gas Drawls also cites a SEC filing which explains that "[m]erchants provide product listings that buyers can browse and order on the Temu mobile app or website."  SAC, fn. 11 at 69.

Lastly, Temu takes intellectual property rights seriously and maintains strict intellectual property policies that govern its platform and mechanisms to report and remove allegedly infringing listings.  *See* Dkt. 29-1 at 4.  Regarding Gas Drawls in particular, Temu's efforts to prohibit allegedly infringing listings have been effective – the SAC concedes that Temu "removed many if not all" of the accused products.[2]  SAC, ¶ 38.

## III.  **LEGAL STANDARD**

To survive a motion to dismiss under Rule 12(b)(6), Gas Drawls must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim has "facial plausibility" if Gas Drawls pleads facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Although the Court must accept all well-pleaded factual

---

[1] Gas Drawls cites a URL to the Congressional Select Committee report, but did not attach a copy.  Because Gas Drawls apparently contends that the document forms the basis for some of its claims, the Court may consider the content of that document on a motion to dismiss.  *Wong v. Arlo Techs., Inc.*, 2019 WL 7834762, at *4 (N.D. Cal. Dec. 19, 2019).

[2] Gas Drawls apparently contends that the lack of allegedly infringing postings somehow suggests Temu tracks Gas Drawls' counsel.  SAC, ¶ 38.  This is untrue.  It is also illogical because counsel could simply use different devices to visit the Temu.com platform to verify the product listings are the same.

allegations as true, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. The Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555. Moreover, the Court is "not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint." *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295–96 (9th Cir. 1998). "There is no plausibility 'where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" *McGurr v. N. Face Apparel Corp.*, 2021 WL 4706984, at *1 (C.D. Cal. Aug. 27, 2021) (quoting *Iqbal*, 556 U.S. at 679).

## IV.  ARGUMENT

### A.  Gas Drawls Fails to State a Claim for Direct Trademark Infringement

In its First, Second, and Third Claims, Gas Drawls asserts direct trademark infringement, counterfeiting, and false endorsement. Given the similarity of elements among these claims, courts in this district routinely analyze such infringement claims together. *See, e.g. Scott & Addison, LLC v. Pinkblush.com*, 2021 WL 3579413, at *1 (C.D. Cal. Apr. 5, 2021) (analyzing 15 U.S.C. §§ 1114 and 1125 claims together). Accordingly, these claims are addressed together below.

#### 1.  Gas Drawls Fails to Plausibly Plead Use in Commerce

In the Ninth Circuit, "use in commerce" is an essential element of any direct trademark infringement claim. *Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672 (9th Cir. 2005). As discussed below, Gas Drawls fails to plausibly plead that Temu, as opposed to the third-party sellers responsible for the allegedly infringing listings, used Gas Drawls' trademarks in commerce.

##### a.  The Court Should Not Accept Gas Drawls' Contradictory Allegations

Gas Drawls bases its infringement claims on the conclusory allegation that Temu directly manufactures and sells the accused products or otherwise controls their manufacture and sale and more. *See* SAC, ¶¶ 16, 23, 26, 28–33, 36, 65–79, 83, 94, and 97. Not only is Gas Drawls incorrect, but its own allegations contradict its bare assertion that Temu, as opposed to third-parties, is responsible for making and selling the accused products.

For example, as discussed in Temu's second motion (Dkt. 29-1 at 6), the Congressional Select Committee report found that "Temu is an online retail platform" that "facilitates transactions between Americans and China-based sellers." SAC at 3, n.3. The complaint filed in Nebraska state court alleges that "the Temu app provides a marketplace for Chinese suppliers to offer their products" through "Temu's network of more than 80,000 China-based sellers." SAC, Ex. 2 at ¶¶ 59, 61. And the Massachusetts district court complaint alleges that "Temu operates an online marketplace that connects consumers and third party sellers" and "[p]roducts on the Temu online marketplace are available for purchase from third party sellers," (SAC, Ex. 1 at ¶¶ 15, 17), and that Temu discloses third-party seller information "via a store information link on both standard product listings and on the abbreviated product listings that are visible in gamified shopping experiences" and that the "store information" links lead "to a pop-up containing the full name and physical address of the seller that is selling the product described in the listing" (*id.* at ¶¶ 28, 30).

**b.** **The SAC's New Sources and Allegations Do Not Show that Temu Used Gas Drawls' Marks in Commerce**

Gas Drawls adds a series of new allegations and sources to its SAC, none of which change the outcome here. For example, Gas Drawls alleges that Temu's merchants are "virtually invisible" to purchasers such that buyers allegedly "perceive[] Temu as the retailer and seller." SAC, ¶ 11. In support, Gas Drawls includes screen shots of what appear to be old Reddit posts and an undated and

unidentified advertisement. But these materials do not support Gas Drawls' contention. SAC, ¶¶ 11–14. The posters and advertisements do not attribute the source of these products to Temu. Rather, they merely show products that may have been available on the Temu marketplace. And regardless, whether buyers allegedly "perceive" Temu as a retailer or seller has no bearing on whether Temu, in fact, used Gas Drawls' marks in commerce. Indeed, Gas Drawls also includes several other screenshots for products **not** accused of infringing. *See, e.g.,* SAC, ¶¶ 41, 45, 46, 48, 50. Those listings again contradict Gas Drawls' theory that Temu is a seller. Rather, they confirm that third-party sellers, **not Temu**, are responsible for creating the contents of the identified product listings and selling the products. For example, Gas Drawls shows a seller page from a listing that is unknown and thus unclear whether it relates to any of the products at issue in this case. SAC, ¶ 41. Gas Drawls suggests that the "incomplete" seller information is nefarious. On the contrary, Temu complies with the INFORM Consumers ACT, and the level of disclosure depends on whether a store meets certain threshold requirements under that ACT.[3] Regardless, the store information names a third-party – UXiaD. Thus, the screenshot itself contradicts Gas Drawls' allegation that the seller is "concealed."



    Gas Drawls also alleges that Temu advises the public that it "controls the fabrication and distribution" of the items on its site which "reflects a standard

---

[3] This Act requires online marketplaces to collect, verify, and disclose specific information for "high-volume" third-party sellers. Lesser disclosures are mandated for sellers falling short of that threshold.

retail sales model."  SAC, ¶ 45.  First, the screenshots do not relate to any of the asserted IP in this case, and Gas Drawls does not contend otherwise.  In addition, the first image below clearly shows that the store/seller is called "DXwsdsock." And although Gas Drawls misleadingly crops the second image to remove the store name, the full listing would have shown a store name belonging to a third-party.



Gas Drawls also alleges that Temu sells products "for which it has title

from its own warehouses." SAC, ¶ 50. The allegation is based on a listing that says "local warehouse." *Id.* But Gas Drawls has no basis to claim that the "local warehouse" is Temu's, rather than a warehouse controlled by a third-party. Indeed, that same image clearly shows that the product is sold by a third-party. and even "ships from this seller." *Id.*



Additionally, Gas Drawls' allegations regarding the specific third-party sellers provided to it by Temu also undermine its infringement theory. SAC, ¶¶ 59–68. As Gas Drawls concedes with the SAC's screenshots, addresses, and secretary of state information, the third-parties Temu provided to it are verified entities. Gas Drawls' inclusion of an unauthenticated and otherwise unknown photograph of a property does not render Gas Drawls' implausible allegations plausible or otherwise show that Temu made and sold any of the accused products. SAC, ¶ 62. Similarly, Gas Drawls' supposition – that because Temu purportedly has affiliates in the same geographic region as other merchants, Temu must therefore own those other merchants – is completely unfounded and untenable (and untethered to the accused goods). SAC, ¶ 69. Finally, the Court stated previously that "Temu's website undisputedly identifies the seller for each

product, and Plaintiff had access to that information when it located the allegedly infringing products. Yet the FAC identifies none of the sellers and alleges no facts suggesting that any are owned or controlled by Temu." Dkt. 35 at 5. The SAC does not cure those deficiencies.

Gas Drawls attaches new Exhibits 4 and 5 to allege, *inter alia*, that Temu actively "manufactures" and "sells" the products on its site. SAC, ¶ 14. But Exhibit 4 ("a Temu notice") does not support Gas Drawls' theory.[4] Rather, consistent with Temu's function as a marketplace, the source explains that products are available for purchase on Temu's platform. The notice also communicates to users of Temu.com that the price of products on Temu's site may increase due to tariffs. At most, this is consistent with the fulfillment function of a marketplace which may be required to disclose any applicable taxes. And even if Temu did control pricing (it does not), the Court already noted that Gas Drawls has not presented authority holding that "price control renders an online marketplace a 'seller' liable for direct infringement." Dkt. 35 at 5.

Exhibit 5 purports to be an "influencer partnership agreement" which Gas Drawls instead refers to broadly as a "vendor" agreement. SAC, ¶ 14. As an initial matter, the document is not authentic. Even if it were, the document appears to relate to promotion of the Temu brand and not any particular product. It certainly does not suggest that Temu itself manufactures or sells any products, let alone the accused products in this case.

Gas Drawls next alleges that because Target and Temu purportedly have overlapping merchants and supply chains, and Target does not claim to be a passive merchant, Temu therefore must not be a passive merchant. SAC, ¶ 15.

---

[4] Exhibit 4 appears to be from a Reddit post (https://www.reddit.com/r/TemuThings/comments/1k1gjt6/urgent_special_offic ial_notice_to_us_customers/) and not authorized or published by Temu.

Gas Drawls allegations are illogical and conflate supply-chain overlap with business-model identity.  In any event, Gas Drawls' citation confirms that Target and Temu have different business models.  SAC, ¶ 15, n.10 (listing "Target **owned brand** products and packaging") (emphasis added).  Moreover, Temu produced to Gas Drawls exemplary seller agreements showing Temu does not take ownership over a third-party seller's goods.

Gas Drawls also cites a TRO order in an Illinois case brought by one of Temu's competitors, Roadget d/b/a Shein, which in turn cites to a complaint from another case.  SAC, ¶ 17.  Neither case involved any of the accused products here nor stated that Temu manufactured or sold the accused products.  Further, alleged infringement of **other** trademarks does not plausibly support infringement of Gas Drawls' marks.  Dkt. 35 at 6, citing *In re Mosaic LLM Litig.*, 2025 WL 2402677, at *3 (N.D. Cal. Aug. 19, 2025) (one alleged instance of infringement cannot be used to presume that the same party committed more infringement."); *Menzel v. Scholastic, Inc.* 2018 WL 1400386 (N.D. Cal. Mar. 19, 2018) (same).

Gas Drawls also cites a "Veridion" report.  SAC, ¶ 23.  But that source supports that Temu connects end-customers with manufacturers and thus directly contradicts Gas Drawls' allegations.  SAC, Ex. 9 (discussing Temu's "consumer-to-manufacturer model" which "directly connects consumers with manufacturers.....").

Gas Drawls further cites to an SEC filing to allege that Temu's business model is "consistent" with it making retail sales.  SAC, ¶ 24.  Again, Gas Drawls' source contradicts its infringement theory.   The SEC filing explains that "[m]erchants provide product listings that buyers can browse and order on the Temu mobile app or website," and "[b]uyers browse, explore and purchase attractive value-for-money merchandise from third-party merchants."  SAC, n.11.

Gas Drawls makes the vague and bald allegation that Temu used Gas Drawl's marks to promote Temu's site and products.  SAC, ¶ 26.  But Gas Drawls

offers no image or other source supporting that allegation.  Instead, Gas Drawls cites an Arizona state court complaint that has nothing to with the accused products or Gas Drawl's marks.  *See* SAC, Ex. 10.   That complaint also contradicts the allegation that Temu is a seller.  For example, that complaint explains that Temu's "primary purpose" is to "facilitate transactions" between U.S. consumers and Chinese third-party merchants.  *Id*. at ¶ 42.  It also explains that "the Temu app provides a marketplace for Chinese suppliers to offer their products" (*id.* at ¶ 70) and lists products offered by "Temu's network of more than 80,000 China-based sellers participating ***in its online marketplace*.**" (*id*. at ¶ 72 (emphasis added)).

Gas Drawls further argues that articles from theinformation.com and greenmatch.co.uk show that Temu exerts "significant control" over the products sold on the Temu platform.  SAC, ¶¶ 27–31.  But those articles are both unsupported speculation and are internally contradictory.  For example, the first article relies on five unidentified sellers and explains that "merchants enter Temu as an independent third party" and that Temu "is not a participant to any transactions between merchants and buyers."  SAC, Ex. 6 at 4.  The first article also agrees that Temu does not dictate to suppliers what products to make – rather, suppliers "pitch to Temu what products they want to sell" – and further notes the factories are <u>not</u> owned by Temu.  *Id.* at 2, 5.  The "greenmatch" article is also unsupported speculation and nonetheless contradicts Gas Drawls' infringement theory.  *In re McKesson HBOC, Inc. Sec. Litig.,* 126 F. Supp. 2d 1248, 1258–59 (N.D. Cal. 2000) (media reports may support "information and belief" allegations only when they corroborate plaintiffs' own investigation and provide specific, reliable facts; conclusory allegations based solely on media reports are insufficient).   For example, the article states Temu facilitates sales by

"connect[ing] manufacturers to shoppers."[5]  SAC, n.12.  Exhibit 7 to the SAC (a complaint filed by Shein against Temu) similarly does not help Gas Drawls. SAC, ¶ 32.  Citing the conclusory and contradictory allegations from a third-party complaint does not render otherwise implausible allegations plausible.  *Fraker v. Bayer Corp*., 2009 WL 5865687, at *3–4 (E.D. Cal. Oct. 6, 2009) (allegations copied from other proceedings cannot substitute for underlying factual pleading).

In addition, the SAC includes screenshots from the Temu.com platform purporting to show allegedly infringing goods and other unrelated goods.  SAC, Ex. 8, ¶¶ 53–57.  Like Gas Drawls' original Complaint and FAC, Exhibit 8 (containing images of the allegedly infringing listings) still does not include ***any*** screenshots of the product-specific listings that correspond to each of the search results or identify any of the product-specific information contained in those listings.  This omission remains highly material and appears to be designed to mislead.  This is confirmed by the one of the listings Gas Drawls adds to the SAC, shown below:



---

[5] The article also appears to be focused on Temu's operation in the United Kingdom, not the United States.

*Id.*, ¶ 57. This listing reveals that the party offering the product is called "Wall Art Personality Home" — not Temu. And it further shows the product displays the mark MF DOO (not any of the asserted registrations), and records indicate that none of these products were ever sold

Thus, just as with Gas Drawls' prior complaints, the characterizations and sources introduced and incorporated by Gas Drawls in the SAC contradict the conclusory assertion that Temu is a manufacturer and direct seller.  SAC at 3. The Court should not accept such contradictory allegations as true for purposes of this motion. *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295–96 (9th Cir. 1998); *Shenzhen Kangmingcheng Tech. Co. v. PDD Holdings Inc.*, 2024 WL 5221272, at *3 (N.D. Ill. Dec. 23, 2024).

### c.  <u>Temu Is an Online Sales Platform and Is Not Liable for any Alleged Infringement</u>

As supported by Gas Drawls' own cited sources—the Congressional report, Nebraska, Massachusetts, and Arizona complaints, Veridion report, SEC filing, and un-cropped product listings cited in the SAC—the reality is that Temu hosted the accused product listings of third-party sellers on its online sales platform. That is not enough to satisfy the "use in commerce" element of a direct trademark infringement claim. *See Tiffany (NJ) Inc. v. eBay, Inc.*, 600 F.3d 93, 102–03 (2d Cir. 2010); *see also Y.Y.G.M. SA v. Redbubble, Inc.*, 2020 WL 3984528, at *3 (C.D. Cal. July 10, 2020); *Tre Milano, LLC v. Amazon.com, Inc.*, 2012 WL 3594380, at *7 (Cal. Ct. App. Aug. 22, 2012).

Gas Drawls again contends "on information and belief" that Temu used and/or offered MF DOOM in its metadata and as a search engine keyword.  SAC, ¶ 55.  Gas Drawls' support for that allegation is a newly added image of "sponsored products" that purportedly show after searching "snoop dogg temu." SAC, ¶ 77.  But Gas Drawls' allegation is notably untethered to the products at

issue in the case and wholly conclusory.  Furthermore, Gas Drawls still does not explain how Temu "offered" any keywords and does not explain how it allegedly "purposefully direct[ed] search engines to landing pages" that sell the infringing goods.  *Perfect 10, Inc. v. Giganews, Inc.*, No. 11-CV-07098 AHM, 2013 WL 2109963, at *14 (C.D. Cal. Mar. 8, 2013), *aff'd*, 847 F.3d 657 (9th Cir. 2017).

Because Gas Drawls fails to plausibly plead that Temu is anything more than a transactional intermediary or that Temu—as opposed to third-party sellers on Temu.com—used Gas Drawls' alleged trademarks in commerce, Gas Drawls' direct infringement claims fail as a matter of law and must be dismissed.

### d.  Gas Drawls' Remaining Allegations are Conclusory and Devoid of Factual Support

Gas Drawls' remaining allegations concerning "use in commerce" are wholly conclusory.  As previously explained, many of Gas Drawls' allegations merely parrot the language of the Lanham Act.  *See, e.g.*, SAC, ¶¶ 92, 105.  Such "[t]hreadbare recitals of the elements … supported by mere conclusory statements" cannot sustain Gas Drawls' trademark infringement claims.  *Iqbal*, 556 U.S. at 678.

The SAC's other allegations fare no better – they are wholly conclusory, without any well-pled basis in fact, and otherwise untethered to Gas Drawls' infringement allegations.  For example, Gas Drawls alleges, on "information and belief," that "Temu is not a passive marketplace" and sells products "for which it directs the manufacture and ships and/or otherwise exercises control."  SAC, ¶ 39.  Not only is this allegation conclusory, but it also says nothing about Temu's purported use in commerce of any of Gas Drawls' alleged trademarks.

None of Gas Drawls' remaining allegations suggest that Temu, as opposed to independent third-party sellers, was responsible for or otherwise controlled the manufacturing, advertising, and/or sale of any of the accused products.  For example, Gas Drawls' reliance on the Massachusetts complaint  is contradictory

-14-

and thus fails for the same reasons as with the FAC.  SAC, ¶ 40 (citing Ex. 1 at ¶ 8); Dkt. 29-1 at 10–11.

Similarly, like the FAC, the SAC continues to rely on the Nebraska complaint to allege that Temu "engag[es] in a deceptive scheme known as 'false reference pricing.'"  SAC, ¶¶ 42–44.  As also explained before, the cited paragraphs of the Nebraska complaint do not support, and instead largely contradict, Gas Drawls' infringement theory.  SAC, Ex. 2 at ¶ 196 and ¶ 213 (Temu provides IP rightsholders the opportunity to "request that Temu review" potentially infringing products on the Temu.com marketplace).  Most importantly, none of the auto-generated ads in the Nebraska complaint contain any of Gas Drawls' alleged trademarks, and the SAC does not allege that Temu used any Gas Drawls trademarks in any auto-generated ads.  *See* Dkt. 35 at 6 ("[s]uch references to alleged infringement of other trademarks do not plausibly support a claim that Temu published advertisements infringing Plaintiff's marks.").

Gas Drawls also alleges that Temu manufactured, marketed, advertised, and/or sold a myriad of items that are counterfeit or blatant copies of Plaintiff's artwork, products, trademarks, and intellectual property."  SAC at 4:9–12; *see also* ¶ 119.  However, the SAC offers no factual support for these allegations.  It does not identify which, if any, of the alleged counterfeits or copies were purportedly manufactured by Temu or any Temu-operated manufacturing facility where such goods could have been made.

The SAC also includes screenshots from the Temu.com platform that Gas Drawls alleges are "exemplars of infringing and/or counterfeit product being offered by Temu on the Temu Online Store."  SAC, Ex. 8.  The exemplars reflect the results of a search for the term "MF Doom" on the Temu.com platform.  SAC, ¶ 55.  However, many of the images are too blurry to determine which, if any, of the products bear Gas Drawls' alleged trademarks, and the SAC offers no further

clarification.  Moreover, none of the screenshots identify that Temu made or was the party selling the products.

Gas Drawls also includes a photo of what appears to be the same package and shipping label that it attached to its previous opposition to Temu's motion to dismiss.  *Compare* SAC, ¶ 51 *with* Dkt. 30-01.  But as the Court already recognized, "the presence of Temu's name on packaging—which is consistent with a fulfillment function—does not support an inference that Temu is the seller of any product, let alone the products at issue here."  Dkt. 35 at 5; *see also Milo & Gabby, LLC v. Amazon.com, Inc.*, 12 F. Supp. 3d 1341, 1345, 1352–53 (W.D. Wash. 2014).

Indeed, none of the foregoing allegations contain any facts substantiating that Temu – as opposed to third-party sellers – made, offered to sell, or sold any of the accused products.  In two separate past proceedings, the Northern District of Illinois dismissed trademark infringement claims against Temu based on similarly vague and conclusory allegations.  *See Shenzhen Kangmingcheng Tech. Co.*; *MaiBo v. WhaleCo, Inc.*, 2024 WL 1859730, at *3 (N.D. Ill. Apr. 29, 2024).

## 2.    **Gas Drawls Fails to Plausibly Plead a Likelihood of Confusion**

The Court should dismiss each of Gas Drawls' trademark infringement claims for the additional reason that Gas Drawls fails to plausibly plead a likelihood of confusion.

While the SAC includes images of purportedly infringing product listings (SAC, Ex. 8), the SAC fails to identify which of those listings contain which of Gas Drawls' alleged marks.  Moreover, for at least one of the alleged marks, GAS DRAWLS, none of the pictured products appear to bear the mark at all.  *Id.*  The SAC fails to explain how or why any of the listings, including those that do not appear to contain any of the alleged trademarks, could possibly confuse consumers as to the origin or sponsorship of the products.

The SAC's remaining "likelihood of confusion" allegations, which are

wholly conclusory and without any factual basis, do not cure this deficiency. For example, the SAC alleges that Temu "exploited" Gas Drawls' trademarks "to confuse the public and create a false association and sponsorship between Plaintiff, MF DOOM, Temu, and Temu's products" and "caused confusion in the marketplace as to sponsorship and association as well as provenance." SAC, ¶ 85. But the SAC fails to explain how or why any alleged use of the Gas Drawls' marks in Temu.com product listings could create such an association. At most, the SAC alleges, "on information and belief," that "consumers have been confused as to the source of Temu's products and have concluded that GAS DRAWLS is associated with, sponsored, endorsed, or is otherwise affiliated with Temu's products" (SAC, ¶ 97), and that Temu's use is intended and designed to create confusion (SAC, ¶¶ 106, 118). Such conclusory allegations are insufficient to show that consumer confusion is more than a mere "possibility." *Iqbal*, 556 U.S. at 679. For this additional reason, the Court should dismiss Gas Drawls' trademark infringement claims.[6]

**B.    Gas Drawls Fails to State a Claim for Contributory Trademark Infringement**

To state a claim for contributory infringement against a service provider, Gas Drawls must sufficiently plead that Temu "(1) continued to supply its services to one who it knew or had reason to know was engaging in trademark infringement, and (2) had direct control and monitoring of the instrumentality used by a third party to infringe." *Spy Optic, Inc. v. Alibaba.com, Inc.*, 163 F.

---

[6] To the extent Gas Drawls seeks enhanced damages for willful counterfeiting, its allegations that Temu acted "willfully, maliciously, and oppressively" (SAC, ¶¶ 100, 116) or "willfully, wantonly, and recklessly" (SAC, ¶ 127) are threadbare recitals unsupported by any facts. *Iqbal*, 556 U.S. at 678. The SAC alleges no facts showing Temu knew of Gas Drawls or intentionally used Gas Drawls' alleged marks.

Supp. 3d 755, 766 (C.D. Cal. 2015) (internal quotations omitted).  Regarding the knowledge element, "a service provider must have more than a general knowledge or reason to know that its service is being used to sell counterfeit goods to be liable for contributory trademark infringement.  Instead, defendants must have contemporary knowledge of which *particular* listings are infringing or will infringe in the future." *Y.Y.G.M. SA v. Redbubble, Inc.*, 75 F.4th 995, 1001 (9th Cir. 2023) (internal quotes and citation omitted), cert. denied, 144 S. Ct. 824 (2024).

The SAC merely attempts to parrot the elements of contributory infringement.  *See generally, e.g.,* SAC, ¶¶ 33, 34, 142–145.  For example, it alleges that Temu "knew or had reason to know" that Temu or its vendors would "use the goods to infringe the plaintiff's trademark" (SAC, ¶ 142) yet "continued to supply its services and market and sell the products at issue" (SAC, ¶ 143).  Gas Drawls' allegation is on its face conclusory, and untethered to any specific product, vendor, or alleged trademark right.

Gas Drawls' pleadings fail because they do not provide any allegations regarding how, why, or when Temu allegedly should have known of the purported infringement.  Instead, Gas Drawls relies on conclusory allegations that Temu ignored "many signals indicating likely counterfeits, such as suspicious pricing and consumer feedback," and failed to engage in "proactive risk mitigation." SAC, ¶ 34.  Those arguments are foreclosed because "willful blindness... requires the defendant to have specific knowledge of infringers or instances of infringement." *Y.Y.G.M. SA v. Redbubble, Inc.*, 75 F.4th 995, 1002 (9th Cir. 2023).  Although Gas Drawls provides a lone and undated product listing allegedly live after its original complaint (SAC, ¶ 57), notably absent is an allegation that Gas Drawls notified Temu of that listing.  Instead, Gas Drawls admits that Temu "removed many if not all" of the accused products.  SAC ¶ 35.

Temu promptly took down all the allegedly infringing listings immediately upon receipt of the draft complaint from Gas Drawls.  Gas Drawls' conclusory contributory trademark infringement claim should therefore be dismissed. *Y.Y.G.M. SA*, 75 F.4th at 1003.

**C.    Gas Drawls Fails to State a Claim for Inducing Trademark Infringement**

To state a claim for contributory trademark infringement based on inducement, Gas Drawls must plead facts showing that Temu "intentionally induced another to infringe a trademark." *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 853–54 (1982).  Inducement requires more than the ability to "reasonably anticipate" infringement; it requires affirmative acts that encourage or invite infringement.  *Gibson Guitar Corp. v. Viacom Int'l Inc.*, 2013 WL 2155309, at *3 (C.D. Cal. May 17, 2013), aff'd, 640 F. App'x 677 (9th Cir. 2016); *see also Inwood*, 456 U.S. at 852 n.13.

Like its contributory infringement claim, Gas Drawls merely parrots the standard. *See, e.g.,* SAC, ¶ 153 (Temu "intentionally induced" vendors to infringe by "directing them as to what to manufacture and overseeing the manufacturing process").  Gas Drawls attempts to support its allegations by relying on Exhibit 6.  But as explained above, that article contradicts Gas Drawls' theories.  It explains that third-parties agree they are "an independent third party" and Temu "is not a participant to any transactions between merchants and buyers."  SAC, Ex. 6 at 4.  The article further explains that merchants are solely responsible to ensure products meet safety and quality standards where they are sold, and do not violate intellectual property rights. *Id.*  Gas Drawls has not plausibly pled that Temu induced infringement. *Routt v. Amazon.com, Inc.*, 2012 WL 5993516, at *3 (W.D. Wash. Nov. 30, 2012).

**D.    Gas Drawls Fails to State a Claim for Vicarious Trademark Infringement**

-19-

Vicarious liability for trademark infringement requires that "the defendant and the infringer have an apparent or actual partnership, have authority to bind one another in transactions with third parties or exercise joint ownership or control over the infringing product." *Perfect 10, Inc. v. Visa Intern. Service Ass'n*, 494 F.3d 788, 807 (9th Cir. 2007). Vicarious trademark liability does not attach unless the defendant has control, such as the ability to stop the infringing activity. *Mophie, Inc. v. Shah*, 2014 WL 10988339, at *4 (C.D. Cal. July 24, 2014).

Gas Drawls merely parrots the elements of the claim and its support is contradictory as explained above. For instance, Gas Drawls alleges broadly that Temu and its merchants "do not function as separate and independent corporate entities." SAC, ¶ 8. However, conclusory labels of "partnership" or "joint ownership" are insufficient. *See, e.g.,* SAC, ¶¶ 158, 160. Thus, Gas Drawls has not plausibly pled that Temu is vicariously liable for any alleged infringement.

**E.** **Gas Drawls Fails to State a Claim for Unfair Competition**

    **1.** **Gas Drawls' Statutory Unfair Competition Claim Fails for the Same Reasons as its Trademark Infringement Claims**

To support Gas Drawls' statutory unfair competition claim, it relies on the same alleged conduct underlying its trademark infringement claims. SAC, ¶ 129. In the Ninth Circuit, "if claims relying on the exact same factual conduct are validly dismissed under the Lanham Act, they should also be dismissed under California Unfair Competition law." *Dr. Seuss Enters., L.P. v. ComicMix LLC*, 300 F. Supp. 3d 1073, 1091 (S.D. Cal. 2017). Because Gas Drawls' statutory unfair competition claim relies on the same conduct underlying its trademark infringement claims, the Court should dismiss the claim for the same reasons discussed above.

Moreover, Gas Drawls fails to plead economic injury sufficient to establish standing to bring its statutory unfair competition claim. *See Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 322 (2011) (a plaintiff has standing if it "has

suffered injury in fact and has lost money or property as a result of the unfair competition"). Gas Drawls' conclusory allegations do not establish an economic injury sufficient to confer standing. SAC, ¶ 132; *Bragg Live Food Prods., LLC v. Nat'l Fruit Prod. Co.*, 2022 WL 3574423, at *2 (C.D. Cal. July 22, 2022) (dismissing unfair competition claim based on conclusory allegations that plaintiff "has sustained, is sustaining, and/or is likely to sustain" actual damages); *Marco Bicego S.P.A. v. Kantis*, 2017 WL 2651985, at *5 (N.D. Cal. June 20, 2017).

Finally, even if Gas Drawls had plausibly alleged a statutory unfair competition claim, the Court should nonetheless dismiss Gas Drawls' demand for disgorgement of profits, actual damages, and statutory damages resulting from the alleged misconduct. SAC, ¶¶ 131–32, 134. "It is well-established that claims for relief under [§ 17200] are limited to restitution and injunctive relief." *Roffman v. Rebbl, Inc.*, 653 F. Supp. 3d 723, 731 (N.D. Cal. 2023); *Bragg Live Food Prods.*, 2022 WL 3574423, at *4 (granting motion to dismiss demand for damages that were unavailable as a matter of law); *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1152 (2023) (holding that disgorgement of profits is not an available remedy under unfair competition law).

Accordingly, the Court should dismiss the Fourth Claim for Relief.

### 2.    Gas Drawls Fails to Plausibly Plead a Common Law Unfair Competition Claim

Gas Drawls asserts an unfair competition claim under California common law. In support of this claim, Gas Drawls relies, at least in part, on the same conduct underlying its trademark infringement claims. SAC, ¶ 138. To the extent such conduct forms the basis for Gas Drawls' common law claim, the Court should dismiss the claim for the same reasons discussed above.

Gas Drawls' common law claim further alleges that Temu's conduct "will tarnish and devalue Plaintiff's marks" because Temu is "subject to allegations of

-21-

egregious and horrific business practices" and "sells products that shock the conscious [sic] …." SAC, ¶ 137. To the extent Gas Drawls' common law claim relies on these allegations, it fails to plausibly allege an unfair competition claim for several reasons.

First, to the extent Gas Drawls' claim relies on the existence of third-party "allegations of egregious and horrific business practices" (*id*.), it fails to explain how such allegations, even if true, are related to Temu's alleged use of Gas Drawls' trademarks on the Temu.com platform. Likewise, the SAC fails to explain how the mere existence of unspecified ***allegations levied by third-parties*** could possibly constitute an unlawful, unfair, or fraudulent business practice of ***Temu***.

Second, to the extent Gas Drawls' claim relies on Temu's alleged sales of "products that shock the conscious" (*id*.), the SAC fails to identify any relationship between the allegedly "shocking" listings (as pictured in the SAC) and any of the allegedly infringing product listings on the Temu platform. Indeed, the SAC fails to explain how product listings that do not contain any reference to Gas Drawls' trademarks and do not appear on the same page as Gas Drawls' alleged trademarks could possibly tarnish or otherwise devalue Gas Drawls' trademarks. Accordingly, the Court should dismiss the Fifth Claim for Relief.

## F. The Communications Decency Act (47 U.S.C. § 230) Bars Gas Drawls' State Law Claims

The CDA states that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider," and expressly preempts any state law to the contrary. 47 U.S.C. §§ 230(c)(1), (e)(3). The Ninth Circuit has interpreted the CDA to establish broad "federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service." *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1118 (9th Cir.

2007) (internal citations omitted).

Courts in the Ninth Circuit routinely dismiss state law claims, such as misappropriation of likeness and unfair competition, against online service providers where third-party users created the allegedly infringing content.  *See, e.g.*, *Free Kick Master LLC v. Apple Inc.*, 140 F. Supp. 3d 975, 979 (N.D. Cal. 2015) (dismissing state unfair competition claims "in the absence of any allegation that Amazon or Google acted as an author of the challenged content"); *Perfect 10, Inc. v. Giganews, Inc.*, 2013 WL 2109963, at *15 (C.D. Cal. Mar. 8, 2013) (dismissing California misappropriation of likeness claims).  That is precisely the case here.

Temu is an online marketplace that facilitates the sale of goods by third-party sellers to U.S.-based consumers and, as such, is entitled to § 230 immunity. *See YZ Prods., Inc. v. Redbubble, Inc.*, 545 F. Supp. 3d 756, 768–69 (N.D. Cal. 2021) (finding § 230 immunity applied to "ecommerce system" that "facilitates various online transactions between third parties by listing third party goods on Defendant's platform").  The allegedly infringing goods identified in Gas Drawls' SAC are no exception.  Those goods were offered on the Temu.com platform by independent third-party sellers, who manufacture or otherwise obtain the goods, create the contents of the Temu.com listings for the goods, and ship the goods to purchasing customers.  The SAC contains no plausible allegations to the contrary. Indeed, as noted above, the content contained in the allegedly infringing listings originated with the third-party sellers, not Temu.  Accordingly, as this Court has already found once, CDA immunity applies, and the Court should dismiss Gas Drawls' state law claims.  Dkt. 35 at 9.

**G.    Gas Drawls' Attempt To Add PDDH To This Case Is Improper And Should Be Stricken**

Four months after it first brought this action, Gas Drawls seeks to belatedly add PDDH to this case.  Gas Drawls' attempt to do so, however, is improper for

-23-

1 multiple reasons.

2      The Court gave Gas Drawls leave to amend its claims against **Temu**. It did

3 not give leave to add a new party or claims against a new party.  Rather, under

4 the Court's Case Management Order (Dkt. 22), the **hearing** deadline for any

5 motion to add parties was December 19, 2025, the day the SAC was filed.  But

6 Gas Drawls never moved to add a party, much less moved early enough for any

7 such motion to be **heard** by December 19.  Nor did Gas Drawls move the Court

8 to modify its Case Management Order.  Instead, Gas Drawls merely injected

9 PDDH into the SAC with no proper procedural basis to do so.  Thus, the Court

10 should strike PDDH from the SAC and remove it from this case.  *Gubanov v.*

11 *Stanislaus Cnty.*, 2015 WL 8666316, at *2–3 (E.D. Cal. Dec. 14, 2015) (joinder

12 barred because the plaintiff sought to add party after the scheduling order deadline

13 and without first obtaining leave of court or demonstrating good cause under Rule

14 16); *Dang v. Fulkerson*, , 2017 WL 2311230, at *2 (C.D. Cal. May 25, 2017),

15 judgment entered,  2017 WL 2294073 (C.D. Cal. May 25, 2017) (unless a court

16 order is obtained modifying the scheduling order, motions filed after the deadlines

17 set in that order are untimely and may be denied solely on this ground).

18                              V. <u>CONCLUSION</u>

19      For the reasons stated above, Gas Drawls has failed to state plausible claims

20 for trademark infringement and unfair competition against Temu.  Accordingly,

21 Temu respectfully requests that the Court dismiss Gas Drawls' SAC in its entirety

22 with prejudice.

23 / / /

24 / / /

25 / / /

26 / / /

27 / / /

28 / / /

                                   -24-

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR LLP

Dated: <u>January 2, 2026</u>        By: <u>*/s/ Hans L. Mayer*</u>
                                            Hans L. Mayer
                                            Matthew S. Bellinger
                                            Nicholas A. Belair
                                            Melis Tirhi

                                            *Attorneys for Defendant,*
                                            Whaleco, Inc., d/b/a Temu

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for Defendant Whaleco, Inc., d/b/a Temu certifies that this brief contains 6,976 words, which complies with the word limit set by the court order dated August 18, 2025.


Dated: <u>January 2, 2026</u>      By: <u>*/s/ Hans L. Mayer*</u>
                                     Hans L. Mayer
                                     Matthew S. Bellinger
                                     Nicholas A. Belair
                                     Melis Tirhi

                                     *Attorneys for Defendant,*
                                     Whaleco, Inc., d/b/a Temu