1  Scott Alan Burroughs (SBN 235718)
   scott@donigerlawfirm.com
2  Andres Navarro (SBN 358499)
   anavarro@donigerlawfirm.com
3  DONIGER / BURROUGHS
   603 Rose Avenue
4  Venice, California 90291
   Telephone: (310) 590-1820
5  Attorneys for Plaintiff

6              **UNITED STATES DISTRICT COURT**

7              **CENTRAL DISTRICT OF CALIFORNIA**

8  GAS DRAWLS, LLC,                    Case No.: 2:25-cv-07425-SB-BFM

9       Plaintiff,                     **PLAINTIFF'S OPPOSITION TO
                                       DEFENDANTS' MOTION TO
   v.                                  DISMISS PLAINTIFF'S SECOND
10                                     AMENDED COMPLAINT**

11 WHALECO, INC.; et al.,

12      Defendants.                    Hearing Date: January 30, 2026
                                       Time: 8:30 a.m.
13                                     Courtroom: 6C
                                       Judge: Honorable Stanley Blumenfeld,
                                       Jr.

14

15

16

17

18

19

20

## **TABLE OF CONTENTS**

I.    Factual Background……………………………………………………..1

II.   Legal Standard…………………………………………………………..2

III.  Argument………………………………………………………………..2

     A. Temu's spoilation requires denial and sanctions………………………2

     B. Drawls sufficiently alleges its trademark claims………………………5

         1. Temu used Drawls' trademarks in commerce………………...5

            a.  Temu used Drawls' trademarks in online advertising

               for its app, website, and product offerings………………7

            b.  Temu used Drawls' marks in commerce by selling

               and/or offering to sell the infringing goods……………..8

               i.    Temu sold the infringing goods…………………..8

               ii.   Temu offered to sell the infringing goods………10

            c.  Temu used Drawls marks in commerce by

               buying keywords………………………………………13

            d.  Temu used Drawls' marks in commerce by advertising..14

            e.  Temu used Drawls' marks in commerce by

               transporting the contraband…………………………….15

         2. Drawls alleges a likelihood of confusion……………………19

         3. Drawls alleges "initial interest confusion"…………………..20

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT

C. Temu is jointly and severally liable for its suppliers' use of the GD Marks……………………………………………………..21

D. Drawls properly alleges inducement and contributory trademark infringement…………………………………………...21

E. Drawls states a claim for vicarious trademark infringement…………23

F. Drawls adequately alleges unfair competition………………………24

G. Section 230 does not bar Drawls' state law claims…………………...25

H. PDDH is a proper Defendant…………………………………………..27

I. The SAC's allegations establish a plausible pattern and practice……27

J. Temu does not challenge the contributory or vicarious counterfeiting claims……………………………………………...28

IV. Temu's authority is unpersuasive and establishes that this dispute is inappropriate for Rule 12 dismissal……………………………………28

V. This motion fails…………………………………………………………30

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT

# TABLE OF AUTHORITIES

**Cases**                                                                          **Page(s)**

*Abbott Lab'ys v. Adelphia Supply USA*,

  2019 WL 5696148, at *8 (E.D.N.Y. 2019) ..................................................... 8, 16

*Adobe Sys. Inc. v. Blue Source Grp., Inc.*,

  125 F.Supp.3d 945 (N.D. Cal. 2015) .................................................... 21

*Alibaba.com Hong Kong, Ltd. v. P.S. Prods., Inc.*,

  2012 WL 1668896 (N.D.Cal. 2012) .................................................... 12, 13

*Ashcroft v. Iqbal*,

  129 S. Ct. 1937 (2009) ............................................................ 2

*Atari Interactive, Inc. v. Redbubble, Inc.*,

  515 F. Supp. 3d 1089 (N.D.Cal. 2021) .................................................... 11

*Bell Atl. Corp. v. Twombly*,

  550 U.S. 544 (2007) ............................................................ 2

*BMW of N. Am., LLC v. S.F. Express Corp.*,

  2020 WL 10486758 (C.D.Cal. 2020) .................................................... 15, 18, 23

*BMW of N. Am., LLC v. Win.It Am., Inc.*,

  2018 WL 7458525 (C.D. Cal. 2018) .................................................... 15, 18

*BMW of N. Am., LLC v. WIN.IT Am., Inc.*,

  2019 WL 926326 (C.D. Cal. 2019) .................................................... 17, 18

*Bosley Med. Inst., Inc. v. Kremer*,

   403 F.3d 672 (9th Cir. 2005) ................................................................. 10

*Bragg Live Food Prods., LLC. v. Nat'l Fruit Prod. Co.*,

   2022 WL 3574423 (C.D.Cal. 2022) ...................................................... 24

*Brookfield Commc'ns, Inc. v. West Coast Entm't Corp.*,

   174 F.3d 1036 (9th Cir.1999) .................................................. 14, 19, 20

*Cooper v. Pickett*,

   137 F.3d 616 (9th Cir. 1997) ................................................................. 24

*DOT Operating Auth., Inc. v. DOT Operations, Inc.*,

   2025 WL 2631606 (C.D.Cal. 2025) ...................................................... 19

*E. & J. Gallo Winery v. Gallo Cattle Co.*,

   1989 WL 159628 (E.D.Cal. 1989).......................................................... 9

*El Greco Leather Prods. Co. v. Shoe World, Inc.*,

   806 F.2d 392 (2d Cir.1986) .................................................................... 8

*Electro Source, LLC v. Brandess–Kalt–Aetna Grp., Inc.*,

   458 F.3d 931 (9th Cir. 2006) .................................................................. 6

*Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*,

   521 F.3d 1157 (9th Cir. 2008) .............................................................. 25

*Fraley v. Facebook, Inc.*,

   830 F. Supp. 2d 785 (N.D. Cal. 2011)................................................. 26

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT

*Free Kick Master LLC v. Apple Inc.*,

 140 F. Supp. 3d 975 (N.D.Cal. 2015) ................................................. 26

*Gucci Am., Inc. v. Hall & Assocs.*,

 135 F. Supp. 2d 409 (S.D.N.Y. 2001) ................................................. 26

*Hepp v. Facebook*,

 14 F.4th 204 (3d Cir. 2021) ................................................. 26

*Inwood Labs., Inc. v. Ives Labs., Inc.*,

 456 U.S. 844, 102 S.Ct. 2182, 72 L.Ed.2d 606 (1982) ........................................ 21

*Jones v. Riot Hosp. Grp. LLC*,

 95 F.4th 730 (9th Cir. 2024) ................................................. 4

*JUUL Labs, Inc. v. Chou*,

 557 F. Supp. 3d 1041 (C.D. Cal. 2021) ................................................. 17

*Karl Storz Endoscopy Am., Inc. v. Surgical Techs., Inc.*,

 285 F.3d 848 (9th Cir. 2002) ................................................. 17

*Lewis v. Heritage Auctions*,

 2025 WL 2376708 (C.D.Cal. 2025) ................................................. 21

*Lockheed Martin Corp. v. Network Solutions, Inc.*,

 194 F.3d 980 (9th Cir.1999) ................................................. 22

*Milo & Gabby, LLC v. Amazon.com, Inc.*,

 2015 WL 4394673 (W.D.Wash. 2015) ................................................. 12

*Mophie, Inc. v. Shah*,

    2014 WL 10988339 (C.D.Cal. 2014) .................................................................. 24

*Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*,

    638 F.3d 1137 (9th Cir. 2011) ............................................................................ 20

*Nike, Inc. v. E. Ports Custom Brokers, Inc.*,

    2018 WL 3472628 (D.N.J. 2018) ....................................................................... 17

*Nike, Inc. v. KAL Am., Inc.*,

    2016 WL 11755396 (C.D.Cal. 2016) ................................................................. 16

*Omega SA v. 375 Canal, LLC*,

    984 F.3d 244(2d Cir. 2021) ............................................................................... 22

*Parts.com, LLC v. Yahoo! Inc.*,

    996 F. Supp. 2d 933 (S.D. Cal. 2013).................................................................. 13

*Perfect 10, Inc. v. Visa Int'l Serv., Ass'n*,

    494 F.3d 788 (9th Cir. 2007) ....................................................................... 23, 27

*Perfect 10, Inc. v. Giganews, Inc.*,

    2013 WL 2109963 (C.D.Cal. 2013) ................................................................... 27

*Philip Morris USA Inc. v. U.S. Sun Star Trading, Inc.*,

    (JO), 2010 WL 2133937 (E.D.N.Y. 2010) ......................................................... 16

*Philip Morris USA v. Liu*,

    489 F. Supp. 2d 1119 (C.D. Cal. 2007) ......................................................... 15, 17

*Philip Morris USA, Inc. v. Lee*,

  481 F.Supp.2d 742 (W.D.Tex. 2006) .................................................. 16

*RCRV, Inc. v. Gracing Inc.*,

  2016 WL 11000048 (C.D.Cal. 2016) .......................................... 19, 20

*Rearden LLC v. Rearden Com., Inc.*,

  683 F.3d 1190 (9th Cir. 2012) ............................................... 14

*Roadget Bus. Pte. Ltd. v. PDD Holdings Inc.*,

  2023 WL 4865005 (N.D. Ill. 2023) ......................................... 13

*Roadget Business Pte. Ltd. v. PDD Holdings, Inc.*,

  2026 WL 44864 (D.D.C. 2026) ............................................... 22

*Rush v. Hillside Buffalo, LLC*,

  314 F. Supp. 3d 477 (W.D.N.Y. 2018) ........................................ 7

*Spy Optic, Inc. v. Alibaba.Com, Inc.*,

  163 F. Supp. 3d 755 (C.D. Cal. 2015) .................................... 14, 29

*Tart Optical Enters., LLC v. Light Co.*,

  2019 WL 9048860 (C.D.Cal. 2019) ......................................... 6, 7

*Tiffany (NJ) Inc. v. eBay Inc.*,

  600 F.3d 93 (2d Cir. 2010) .................................................. 29

*Tre Milano, LLC v. Amazon.Com, Inc.*,

  2012 WL 3594380 (Cal.Ct.App. 2012) ...................................... 29

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT

*Universal Prot. Serv., LP v. Coastal Fire & Integration Sys., Inc.,*

   2023 WL 4042582 (S.D.Cal. 2023) ..................................................................... 19

*Vans, Inc. v. Walmart, Inc.,*

   2023 WL 6922833 (C.D.Cal. 2023) .................................................................... 11

*Westport Ins. v. Ray Quinney & Nebeker,*

   2010 WL 2521460 (D.Utah 2010) ....................................................................... 28

*WhaleCo Inc. v. Shein Tech. LLC,*

   No. CV 23-3706 (TJK), 2025 WL 2801861 (D.D.C. Sept. 30, 2025) .................. 9

*Y.Y.G.M. SA v. Redbubble, Inc.,*

   75 F.4th 995 (9th Cir. 2023) ......................................................................... 28, 29

**Statutes**

15 U.S.C. § 1141(1)(a) ............................................................................................ 14

15 U.S.C. § 1114 ..................................................................................................... 18

15 U.S.C. § 1114(a)(1) ........................................................................................ 6, 10

15 U.S.C. § 1127 ......................................................................................... 6, 8, 10, 16

47 U.S.C. § 230 ................................................................................................. 25, 26

47 U.S.C. § 230(c) ................................................................................................... 25

47 U.S.C. § 230(e)(2) .............................................................................................. 26

**Rules**

Fed. R. Civ. P. 37(e) ................................................................................................. 4

Fed. R. Evid. 406 ................................................................................. 27

**Other Authorities**

Am. Jur 2d Evidence § 403 ................................................................. 28

Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*, § 25:26

  (5th ed. 2017) ................................................................................. 6, 14

## MEMORANDUM IN OPPOSITION

Plaintiff, Gas Drawls, LLC ("Drawls"), properly alleges facts that, taken as true, establish trademark ownership and infringement. Defendant, Whaleco, Inc., which operates the Temu app and webstore ("Temu"), moves to dismiss the Second Amended Complaint ("SAC") but fails to address most of the new bases for liability. Temu's motion is predicated on its assertion that Temu was only minimally involved in the manufacture and sale of the contraband sold through its proprietary digital-sale-application (or "app") and website. But this is false – or disputed – and even if it were true the law is clear that an infringer's manufacture or legal sale of an infringing product is *not* necessary to find "use in commerce" and thus infringement.

Temu also complains that the SAC fails to include more screenshots of Temu listings and advertisements for the contraband or details related to those listings. But Drawls was unable to capture such content because Temu was surveilling Drawls' counsel during his investigation of the site and deleting the product listings soon after counsel's viewing. This motion fails.

## I.    Factual background

Daniel Dumile Thompson, better known by his stage name "MF DOOM," was an artist with numerous critically acclaimed albums and a dedicated fanbase. Dkt. 36 ("SAC"), ¶9. Drawls is the owner of the rights to MF DOOM's intellectual

property, including the name, voice, signature, photograph, and likeness rights, and the registered trademarks associated with MF DOOM ("GD Marks"). *Id.*

Temu is an online retailer and app purveyor that "has flooded the United States with cheap products" and used its app as "malware" to "unlawfully exfiltrate[]" sensitive U.S. consumers information for its own benefit. SAC, pg. 2. Temu offers to sell and sells products that it sources, advertises, obtains payment for, transports, directs the manufacture of and otherwise exercises control over. SAC, ¶¶10,13-14. Temu obfuscates its true relationship with the purported third-party sellers and exerts the control over them and every aspect of its business, including the sourcing, design, pricing, marketing, transportation, sale, returns and removal of its products. *Id.* at ¶¶11,14-25; pg. 12, fn. 13.

## II.    Legal standard

Here, the Court must accept the plaintiff's allegations as true and construe them in the light most favorable to the plaintiff. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 550 (2007). Detailed factual allegations are not required. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

## III.    Argument

### A.    Temu's spoliation requires denial and sanctions

Temu attempts to exploit its spoliation. It urges this Court to dismiss the SAC because it does not include detailed product listing pages or advertisements

1    for the contraband at issue. This argument is in bad faith because Temu

2    surreptitiously monitored Drawls' counsel, Jeffrey Gluck, Esq., during his

3    investigation of Temu's website and quickly moved to delete the product listings

4    for the products at issue soon after counsel visited those pages. As set forth in

5    detail in the Gluck Declaration,[1] he navigated to Temu's website on February 11,

6    2025 and visited numerous Temu product listings pages and viewed thousands of

7    Temu items bearing Drawls' marks. *Id.* at 2-5. When Mr. Gluck returned to those

8    pages to capture the product listings, and before advising Temu, he discovered that

9    all listings had been deleted. *Id.* at 6-7. On multiple other occasions, including after

10   this cases' filing, he investigated Temu's site and viewed additional infringing

11   listings and after promptly returning to capture the evidence each time he found the

12   product listings inexplicably deleted. *Id.* at 11-12. This prompt deletion of a

13   massive volume of infringing listings right after each of Mr. Gluck's visits can

14   only be explained by Temu's surveillance of Mr. Gluck's online activity and

15   deletion of the investigated product listings. *Id.* at 18. In discovery and during the

16   parties' meet-and-confer,[2] Temu refused to admit or provide details about its

17

18   _____

     [1] The Declaration has additional facts.

19   [2] In the Motion's fn.2, Temu dispute Drawls' surveillance claims, but provides no
     evidence or explanation as to how each of the listings investigated by counsel
     disappeared promptly his visit. And Temu claims counsel could have used
20   "different devices" to visit Temu but that would have made no difference – once
     the product listings were deleted the public could no longer view them.

surveillance, tacitly conceding that it surveilled counsel and destroyed evidence. This is sanctionable.

Rule 37(e) governs the failure to preserve electronically stored information ("ESI") and holds that if ESI "that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery," the court, upon a showing of prejudice, may issue sanctions to cure the prejudice or issue more severe sanctions if the spoliation was with intent." Fed. R. Civ. P. 37(e). If the spoliating party acted with the intent and lesser sanctions are insufficient, default can be entered. *Jones v. Riot Hosp. Grp. LLC*, 95 F.4th 730, 735 (9th Cir. 2024). Relevant intent considerations include the timing of destruction, affirmative steps taken to delete evidence, and selective preservation. *Id.* at 735.

These requirements are met. Temu surveilled Drawls' counsel and deleted the only evidence of the infringing product listings soon after counsel reviewed same, before *and during* litigation. Temu's willful destruction of evidence prejudiced Drawls by denying it the opportunity to capture that evidence and make test buys of the product. Gluck Decl. at 14. Temu has not produced the deleted product listings in discovery and has produced only "selectively preserved" ESI relating to certain sales. At a minimum, to "cure the prejudice" the court should

4

1   deny this motion and order Temu to produce the material or show cause as to how

2   it was deleted.

3       If this misconduct does not warrant denial, the motion still fails.

4       **B.    Drawls sufficiently alleges its trademark claims**

5       Drawls asserts ownership of the registered GD Marks[3] and Temu's wrongful

6   exploitation of those marks without consent in commerce. This is sufficient, as

7   follows.

8       **1.    Temu used Drawls' trademarks in commerce**

9       Temu concedes that "products are available for purchase on Temu's

10  platform." Motion at 9:8-9. But Temu's chief argument is that it hasn't used the

11  GD Marks in commerce because the products it makes available for purchase are

12  not manufactured or sold by Temu. This claim, even if true, is insufficient to avoid

13  liability here because, *inter alia*, being the manufacturer or the contracting, legal

14  party in the product sale are not the only ways to use marks in commerce.

15      Temu claims to provide only services but fails to address the "use in

16  commerce" standard applicable to service providers. Worse, the Motion, which is

17  predicated on a no-use-in-commerce argument, *fails to cite*, let alone apply, §1127,

18  which defines "use in commerce." Temu's narrow interpretation of that term defies

19  both the text and repeated holdings that it should be applied "broadly."

20  _____

[3] SAC, ¶9, alleging ownership of the "registered trademarks."

A mark is "used in commerce" for goods when the goods are "sold **or** transported in commerce" and for services "when it is used **or displayed** in the sale or advertising of services and the services are rendered in commerce, **or** the services are rendered in more than one State or in the United States and a foreign country and the person rendering the services is engaged in commerce in connection with the services." 15 U.S.C. § 1127 (emphasis added). Per Section 1114, a mark is used commercially "in connection with the sale, offering for sale, distribution, or advertising of any goods or services." 15 U.S.C. § 1114(a)(1). Temu certainly "displayed" the GD Marks on its own site and app and in search engine results. SAC, Ex.8. And the text does not require the infringer to be a manufacturer or the contracting party to the sale, as Temu claims.

To the contrary, a "totality of the circumstances" test applies and considers the entirety of an infringer's conduct to determine if a mark's usage qualifies as a use "in the ordinary course of trade under § 1127." *Electro Source, LLC v. Brandess–Kalt–Aetna Grp., Inc.*, 458 F.3d 931, 940 (9th Cir. 2006) (internal quotations omitted). The Lanham Act "broadly defines commerce" and covers uses "in connection with" a "sale, offering for sale, distribution, or advertising." *Tart Optical Enters., LLC v. Light Co*., 2019 WL 9048860, at *7 (C.D.Cal. 2019); McCarthy § 25:26 (5th ed.) (describing Act's "broad definition" of infringement, including that "merely advertising an infringing mark itself is an act of

infringement, apart from any manufacturing or sale")(remaining citations omitted). Liability "can arise from activities including the use of a mark on the internet," and "use of a mark in a foreign country where that use affects U.S. commerce." *Id.* (citations omitted). It is thus "well settled that the scope of 'in commerce'" is "broad and has a sweeping reach." *Rush v. Hillside Buffalo, LLC*, 314 F. Supp. 3d 477, 482–83 (W.D.N.Y. 2018)(citation omitted). Per these canons, Temu has clearly "used in commerce" Drawls' trademarks.

### a. Temu used Drawls' trademarks in online advertising for its app, website, and product offerings

Drawls alleges that Temu used Drawls' trademarks "in commerce" in its online advertising – on search engines and its own site and app – to market its app and webstore and draw consumer to its site and app to shop and download and use the Temu app. SAC ¶¶44,83,86,89-90,92,94,103,107,116,147. The "in commerce" standard is "satisfied by messages or advertisements sent posted over the Internet." *Rush,* 314 F. Supp. 3d at, 483, (citations omitted). Temu has used and displayed Drawls' marks "in the sale or advertising of [its] services" in a least three ways on its app and site and in its online advertisements: (1) to advertise its webstore/app to, and induce, consumers to visit its site and download its app and use its services to shop, at which point Temu could exfiltrate the consumer's valuable, sensitive, and confidential user data; to advertise the infringing products and that Temu's services could be used to obtain them; and to advertise Temu's other services,

7

which include the product marketing, sales and delivery. *See* SAC, ¶¶73-75,94,103,Ex.8; 15 U.S.C. § 1127. Temu fails to challenge these allegations.

Finally, even if Temu provides no more than "services" in the form of a platform that consumers can use to buy products, those services are rendered in "more than one state" and a "foreign country," namely China, and Temu is certainly engaged in commerce when it uses trademarked products to advertise its site, services, and app. This is also a commercial use per §1127's text.

### b.    Temu used Drawls' marks in commerce by selling and/or offering to sell the infringing goods

Drawls has alleged that Temu offered to sell *and* sold the infringing goods. SAC, ¶¶14,39-41,51,56-57,76-77. Either is sufficient.

### i.    Temu sold the infringing goods

Temu's sale of the contraband establishes a use in commerce, even if it did not manufacture of the goods. *See El Greco Leather Prods. Co. v. Shoe World, Inc.*, 806 F.2d 392, 396 (2d Cir.1986) (defendant involved "neither in the manufacture nor the affixing of the [plaintiff's] trademark to the shoes," but its sales were "sufficient 'use' for it to be liable[.]"). Drawls need not allege that Temu made the sale but only that Temu "materially participated in the sale." *Abbott Lab'ys,* 2019 WL 5696148, at *8. Temu did not just "facilitate sales between wholesale buyers and sellers"; instead, it "played an active role" in the transaction. *Id.* at *9 (citation omitted).

1    Temu concedes Drawls' allegations that Temu's suppliers must "pitch to

2    Temu what products they want to sell." Motion, 11:17-20. By selecting the

3    products to be sold, Temu materially participates. Drawls proffers a series of other

4    allegations and evidence establishing that Temu participated in the infringing

5    product sales, showing that Temu selects, procures, sources, prices, advertises,

6    accepts payment for, transports, and warehouses the goods.[4] SAC, ¶¶11-51,57-

7    70,77.

8        Drawls also alleges that consumers see the Temu's product advertisements

9    and the product on Temu's site, pay Temu for the product, and view Temu as the

10   seller. SAC, ¶¶11-14. Drawls has proffered evidence that Temu's customers

11   receive products that are marked as being shipped "for Temu." *Id.* at ¶51. And

12   Temu itself conceded in at least one other case that it works with "suppliers" as

13   opposed to third-party sellers. *WhaleCo Inc. v. Shein Tech. LLC*, No. CV 23-3706

14   (TJK), 2025 WL 2801861, at *4 (D.D.C. Sept. 30, 2025)(Temu alleged that its

15   competitor "summon[ed] Temu's **suppliers** on false pretenses" and "searched

16   them "for Temu sales, commercial, and other financial information.")(emphasis

17

18   _____

     [4] Temu bemoans the SAC's inclusion of products that do not show the GD Marks
19   (Mot. at 6-7), but these screenshots support the logical inference that Temu is not
     the passive marketplace it claims to be. *E. & J. Gallo Winery v. Gallo Cattle Co.*,
     1989 WL 159628, at *27 (E.D.Cal. 1989) (citations omitted) ("Intent to capitalize
20   on Plaintiff's brand need not be shown by direct evidence. It may be proved by
     circumstantial evidence.").

added).  Of course, independent sellers would not have Temu's financial

information. Temu does not substantively challenge these allegations, which,

considered in aggregate, plausibly allege Temu's material involvement with the

sales.

Finally, even if Temu simply connects visitors to its site that want products

bearing the GD Marks[5] with sellers of those products, Temu is *still* acting "in

connection" with that sale.

### ii.    Temu offered to sell the infringing goods

Temu used the GD Marks "in connection with" the "offer to sell" the

infringing items and resultantly in commerce. 15 U.S.C. § 1114(a)(1) (use is in

commerce if "**in connection with** the [] offering for sale") (emphasis added).[6] This

is so even if a third-party and not Temu made the sale, because the Lanham Act

"does not require any actual sale of goods and services." *Bosley Med. Inst., Inc. v.*

*Kremer*, 403 F.3d 672, 679 (9th Cir. 2005)(citation omitted).

Temu asserts that "whether buyers allegedly "perceive" Temu as a retailer or

---

[5] Temu argues that a mark to be used in commerce must reference Temu's *own* product, but there is no textual support for such a requirement in §1127. Even if Temu does not own the product, the trademark thereupon still identifies "the source of the goods" as Drawls and not Temu or the supplier. 15 U.S.C. §1127.
[6] Temu owns and operates the webstore/app that displayed the Drawls' marks on products to consumers and §1141's text does not state the use has to be "in connection with **its** sale" or "the **manufacturer's** sale" but instead says "the sale" and thus refers to **any** sale, including third party sales.

seller has no bearing on whether Temu, in fact, used Gas Drawls' marks in commerce." Motion, 6:4-6. But this is wrong. An "online marketplace may be liable for offering to sell an infringing good if a person shopping on the website would have reasonably believed that [website provider], and not the third-party sellers, was the seller with title or possession of a product who could have entered into a contract to transfer title or possession." *Vans, Inc. v. Walmart, Inc*., 2023 WL 6922833, at *4 (C.D.Cal. 2023), citing *Atari Interactive, Inc. v. Redbubble, Inc*., 515 F. Supp. 3d 1089, 1104 (N.D.Cal. 2021). This is so "even if it does not have the legal right to sell the infringing item." Id., citing *Levi Strauss & Co. v. Shilon*, 1212 F.3d 1309, 1312 (9th Cir. 1997). In such cases "the ultimate question is whether a reasonable consumer would believe that [Temu] was selling [the third-party's] allegedly infringing listings." Id. at *5.

Drawls alleges that reasonable consumers would believe the contraband offered for sale was being offered by Temu because the infringing products were sold on Temu.com and the Temu app;  Temu's advertisements bear Temu's name only; Temu's logo and branding are prevalent on the app/webstore; and the supplier's branding is at the very least subservient to Temu's and often "virtually invisible" to the consumer. SAC, ¶¶11-12,14,77,Ex.8. The fact that a supplier may fill that order does not change this fact that the consumer views Temu as the seller.

1    Drawls' allegations suffice because "a reasonable consumer may believe that

2  [the allegedly third-party product] sold on [Temu].com are sold by [Temu], not

3  [the third party] because the [] listings are on [Temu].com." *Vans*, *Inc*., WL

4  6922833. at *5; see also *Alibaba.com Hong Kong, Ltd. v. P.S. Prods., Inc*., 2012

5  WL 1668896, at *3 (N.D.Cal. 2012) ("factual dispute as to whether a reasonable

6  buyer going on www.aliexpress.com would have believed that Alibaba itself was

7  making an offer to sell[.]"); *Milo & Gabby, LLC v. Amazon.com, Inc*., 2015 WL

8  4394673, at *14 (W.D.Wash. 2015) (factual dispute as to whether Amazon's

9  display of a third-party's product on its website with an invitation to buy the item

10  constituted an "offer to sell"). Moreover, in similar cases, courts in the "Ninth

11  Circuit have denied online sales platforms' motions for summary judgment that

12  they do not "offer to sell" third party goods listed on their website." Id. at *4.

13    Finally, the question is not binary: the "in connection with" language in

14  §1127 makes clear that *both* Temu and the supplier could have offered to sell the

15  infringing goods and thus *both* to be using the GD Marks in commerce. In other

16  words, Temu and the supplier both materially contributed to selling the contraband.

17    Here there is at least is a "factual dispute as to whether a reasonable buyer

18  going on" Temu.com or its app "would have believed that [Temu] itself was

19  making an offer" because the suppliers' names are  "in small font" and the term

20  "supplier" or "source" may "be interpreted to mean manufacturer," and the "buyer

12

1  submits a payment to [Temu], not the "supplier."'" *Alibaba.com Hong Kong LTD*,

2  2012 WL 1668896, at *3 (denying summary judgment).

3      **c.**    **Temu used Drawls marks in commerce by buying keywords**

4         Temu has also used Drawls' marks in commerce by buying them as

5  keywords and directing search engines to provide to consumers looking for MF

6  DOOM products to serve to those consumers advertisements for Temu's website

7  and the contraband thereupon. See *Roadget Bus. Pte. Ltd. v. PDD Holdings Inc.*,

8  2023 WL 4865005, at *7 (N.D. Ill. 2023)(rejecting Temu' challenge; finding with

9  keyword use "Temu is capitalizing off of the goodwill of" plaintiff). The "use of a

10  trademark as a search engine keyword triggering the display of a competitor's

11  advertisement is a 'use in commerce' that activates the Lanham Act's protections."

12  *Parts.com, LLC v. Yahoo! Inc.*, 996 F. Supp. 2d 933, 936 (S.D. Cal. 2013)(citation

13  omitted). The SAC alleges that Temu used "MF DOOM" in Temu.com's metadata,

14  and as part of its search engine advertising, to draw consumers to landing pages

15  that include Temu's links for the contraband. SAC, ¶¶55,77; Ex. 8. Temu thus

16  competed with Drawls for the attention and pocketbook of online consumers

17  looking for MF DOOM merchandise by using the GD Marks to trigger Temu

18  listings for the infringing products. This was an infringing use in commerce.

19         Drawls alleges that Temu used Drawls' marks in its coding to direct "search

20  engines" to Temu pages on which the infringing products were offered for sale,

1  which is sufficient because that use is "*in connection with* the sale, offering for sale,

2  or distribution of" said product. *See Spy Optic, Inc. v. Alibaba.Com, Inc.*, 163 F.

3  Supp. 3d 755, 765 (C.D. Cal. 2015) (emphasis in original); *see also Brookfield*

4  *Commc'ns, Inc. v. West Coast Entm't Corp.,* 174 F.3d 1036, 1062–63 (9th

5  Cir.1999) (use of mark in defendant's website "metatags" constituted created initial

6  interest confusion). This is sufficient for now to establish commercial use without

7  forcing Drawls to prove, without discovery, how Defendant's website and metadata

8  are configured. *See id.*

9    **d.    Temu used Drawls' marks in commerce by advertising**

10       Drawls alleges that Temu used Drawls' marks to advertise its app, webstore,

11  and services, as well as the infringing products. SAC, ¶¶77,83,86,89-92.

12  Advertising use of the GD Marks is in commerce even if there was no attendant

13  sale. McCarthy § 25:26 (5th ed.) ("merely advertising" a mark is infringement)

14  And "non-sales activities such as solicitation of potential customers may be taken

15  into account as part of the "totality of the circumstances" inquiry." *Rearden LLC v.*

16  *Rearden Com., Inc*., 683 F.3d 1190, 1205 (9th Cir. 2012). Temu allegedly "used"

17  and "displayed" the GD Marks to solicit customers and "in connection with" its

18  "advertising" of both the contraband and Temu's site and app on search engines

19  and its site and app and that suffices. SAC, ¶¶104-105; 15 U.S.C. §1141(1)(a).

20

Temu's delivery of its advertising – which advertising included Drawls' trademarks and a reference only to Temu and not to any "sellers" – to consumers looking for Drawls and MF DOOM product is a use in commerce. *See, e.g.,* SAC, ¶¶12,77. This suffices.

### e.    Temu used Drawls' marks in commerce by transporting the contraband

Drawls specifically alleged "that Temu is responsible for the shipping and distribution of the goods at issue," and Temu's "suppliers' factories ship products in bulk to Temu warehouses in China and the U.S. and Temu "handles marketing and quality checks, packing items into parcels shipped to shoppers and ensuring that the products pass export and import customs clearance." SAC, ¶28,50,51,Ex.6. Temu thus used GD Marks in commerce by either participating in the transporting or importing the infringing product or both. Temu fails to challenge this point.

A "use in commerce" occurs whenever "goods are sold or transported in commerce" and exists "even in cases where the defendant never actually possessed the goods." *BMW of N. Am., LLC v. Win.It Am., Inc.*, 2018 WL 7458525, at *3 (C.D. Cal. 2018), citing, *e.g.*, *Philip Morris USA v. Liu*, 489 F. Supp. 2d 1119, 1122 n.2 (C.D. Cal. 2007). Thus, a party that imports "counterfeit goods into the United States from China, and transports or arranges the transportation of these counterfeit goods to its warehouses" is liable. *BMW of N. Am., LLC v. S.F. Express Corp.*, 2020 WL 10486758, at *1 (C.D.Cal. 2020).

1   Drawls has alleged that Temu transported, distributed, shipped, and

2   imported the infringing goods. *See, e.g.,* SAC, ¶¶10,14,17-18,21,27,28. And

3   Drawls has alleged that Temu "sources" and "procures" the infringing products,

4   and ships items from its own warehouse, which further establishes its transport,

5   and includes packaging stating that Temu is responsible for transporting the

6   products. *Id.* at ¶45,50-51.

7   §1127 specifically states that a mark is used in commerce on goods when the

8   goods are "sold *or transported* in commerce." *Nike, Inc. v. KAL Am., Inc.*, 2016

9   WL 11755396, at *3 (C.D.Cal. 2016), 15 U.S.C. § 1127 (emphasis by court).

10  Drawls has "alleged that Defendants were participants in the transportation of the

11  goods in question, [so] it has sufficiently alleged the "use in commerce"

12  element[.]" *Id.,* citing *Philip Morris USA Inc. v. U.S. Sun Star Trading, Inc.*, (JO),

13  2010 WL 2133937, *5 (E.D.N.Y. 2010) (infringer "used the counterfeit marks in

14  commerce by arranging for their transport into the United States."); *Philip Morris*

15  *USA, Inc. v. Lee*, 481 F.Supp.2d 742, 748 (W.D.Tex. 2006) (liability for those

16  "responsible for the importation of counterfeit goods, even when the goods are

17  seized at a port of entry and not distributed further.")(remaining citation omitted).

18  Indeed, even "a defendant who does not directly sell, but materially

19  participates in the sale **or** transport of infringing goods, may be held directly liable

20  for infringement. *Abbott Lab'ys v. Adelphia Supply USA*, 2019 WL 5696148, at *8

16

1  (E.D.N.Y. 2019)(emphasis added), citing *BMW of N. Am., LLC v. WIN.IT Am.,*

2  *Inc.,* 2019 WL 926326, at \*2 (C.D. Cal. 2019) (requirement "satisfied by the

3  importation and transport of counterfeit goods, even in cases where the defendant

4  never actually possessed the goods."); *see also Nike, Inc. v. E. Ports Custom*

5  *Brokers, Inc.*, 2018 WL 3472628, at \*6 (D.N.J. 2018)("Defendants' efforts in the

6  importation of commercial quantities of counterfeit goods constitutes

7  "transportation in commerce" […] despite the fact that Defendants did not

8  physically transport the containers."); *Philip Morris USA Inc.,* 489 F. Supp. 2d at

9  1122-23 (liability for defendant who "unload[ed] and transport[ed] counterfeit

10  cargo").

11      The "or transported" language of §1127 makes it clear that a "use in

12  commerce" under the Lanham Act is "not limited to sales." *Karl Storz Endoscopy*

13  *Am., Inc. v. Surgical Techs., Inc.*, 285 F.3d 848, 855 (9th Cir. 2002). Indeed, an

14  allegation that a party is "responsible for shipping and handling of the products

15  sold" or stored them in their warehouse "is sufficient to establish Defendants were

16  part of the distribution chain and therefore **used the goods in commerce**." *JUUL*

17  *Labs, Inc. v. Chou*, 557 F. Supp. 3d 1041, 1052 (C.D. Cal. 2021)(citations omitted,

18  emphasis added). Here, Drawls alleges that Temu has transported, handled, and

19  warehoused the contraband, and did so in connection with its own suite of services,

20  which included advertising, offering for sale, and accepting payment for the

1  products. *See* SAC, ¶¶45,50,51,83; 15 U.S.C. § 1114 (a "use in commerce" is one

2  "in connection with" the sale, offering for sale, distribution, or advertising"). This

3  is sufficient even if the "suppliers" manufactured and sold the items.

4      *BMW of N. Am.* is instructive. There, the infringer argued that its "alleged

5  misconduct was "limited to facilitating sales and placing shipping labels on the

6  accused products." 2019 WL 926326, at *3. Given the allegations, however, and

7  evidence of importation developed during discovery, the court found a triable issue

8  as to the alleged infringer's degree of involvement. Discovery is similarly

9  necessary here.

10      Another court found allegations more threadbare than Drawls' to be

11  sufficient. The defendant there contended plaintiffs' allegations that they

12  "imported and transported the allegedly infringing goods" were "bare legal

13  conclusions" because the "complaint does not include any facts in support[.]"

14  *BMW of N. Am., LLC,* 2020 WL 10486758, at *3. The court ruled that "[a]lthough

15  these allegations are brief, "[b]ecause Plaintiffs allege more than mere facilitation

16  and instead claim that Defendant imported and distributed Counterfeit Goods, the

17  complaint satisfies the 'use in commerce' requirement[.]" *Id.,* citing *BMW of N.*

18  *Am.*, 2018 WL 7458525, at *3. So true here.

19  ///

20  ///

### 2. Drawls alleges a likelihood of confusion

It is well-established that likelihood of confusion is a "fact intensive inquiry" inappropriate for resolution at this stage. *See, e.g.*, *RCRV, Inc. v. Gracing Inc.*, 2016 WL 11000048, at *2 (C.D.Cal. 2016) ("the likelihood of consumer confusion is not appropriate to determine at the motion to dismiss stage."); *DOT Operating Auth., Inc. v. DOT Operations, Inc.*, 2025 WL 2631606, at *4 (C.D.Cal. 2025) (a dismissal grant in a "consumer confusion" case "is a rare situation")(citation omitted).

Plaintiff has nevertheless sufficiently pled a likelihood of confusion by identifying its marks and products and showing that the disputed products and infringing marks thereupon are virtually identical. *See* SAC, ¶¶52,89-97; Exs. 3,8. In "light of the virtual identity of marks, if they were used with identical products or services likelihood of confusion would follow as a matter of course*." Brookfield*, 174 F.3d at 1056. The marks and products are identical.

Even if they weren't, a likelihood of confusion arises where a "reasonably prudent consumer" is "likely to be confused as to the origin of the good or service bearing one of the marks." *Universal Prot. Serv., LP v. Coastal Fire & Integration Sys., Inc.*, 2023 WL 4042582, at *4 (S.D.Cal. 2023)(citation omitted). This includes consumers "led to wrongly believe that the defendant is affiliated, endorsed by, or sponsored by the plaintiff through use of the plaintiff's trademark." *Id.* at *5.

Drawls meets the liberal standard for pleading confusion, which requires basic allegations that the products bore marks highly similar marks. *See RCRV*, 2016 WL 11000048, at *2. Drawls alleges Temu's "marketing and sale of counterfeit versions of the brand's trademark" and products "bearing counterfeit and/or confusingly and/or virtually identical trademarks" that "caused confusion in the marketplace." SAC, ¶¶52,85; Exs. 3, 8. This suffices.

### 3.    Drawls alleges "initial interest confusion"

Temu's use also caused "initial interest confusion" by using the GD Marks "to capture initial consumer attention," and this is actionable "even though no actual sale is finally completed as a result of the confusion, may be still an infringement." *Brookfield,* 174 F.3d at 1062. Drawls plausibly alleges that Temu used the GD Marks in its site listings and search engine advertising to draw consumers to its website and induce them to download its proprietary app, which functions as malware and exfiltrates the user's sensitive personal data. SAC, ¶¶12,44,77,92. Consumers searching for MF DOOM products online were served Temu advertisements that incorporated Drawls' trademarks in a "misleading and deceptive" manner that drew consumers to Temu's website and app. *Network Automation, Inc. v. Advanced Sys. Concepts, Inc*., 638 F.3d 1137, 1148 (9th Cir. 2011). Drawls sufficiently alleges that Temu used the GD Marks and reputation to

draw potential consumers' interest in not only the infringing product *but Temu's app itself.* SAC, ¶94,103,107,116,147.

**C.    Temu is jointly and severally liable for its suppliers' use of the GD Marks**

Temu argues that its seller is solely responsible for using the GD Marks in commerce. But this assertion, even if true, does not allow it to evade liability because it is settled that "any member of the distribution chain of allegedly infringing products can be jointly and severally liable for the alleged misconduct." *JUUL Labs, Inc.,* F. Supp. 3d at 1052 (citations omitted); *Lewis v. Heritage Auctions*, 2025 WL 2376708, at *3 (C.D.Cal. 2025)(same), citing *Adobe Sys. Inc. v. Blue Source Grp., Inc.,* 125 F.Supp.3d 945, 973 (N.D. Cal. 2015)(collecting cases). Thus, even if it was solely Temu's supplier that offered to sell or sold the infringing products, Temu allegedly hosted, warehoused, imported, and distributed those products and is thus within the chain of distribution and liable for the supplier's use of the GD Marks in commerce.

**D.    Drawls properly alleges inducement and contributory trademark infringement**

Contributory infringement exists where a defendant (1) "intentionally induced" the infringement, or (2) continued to supply an infringing product or service to an infringer with reason to know of the infringement. *Inwood Labs., Inc. v. Ives Labs., Inc*., 456 U.S. 844, 855, 102 S.Ct. 2182, 72 L.Ed.2d 606 (1982).

When the alleged direct infringer supplies a service, the court must "consider the extent of control exercised by the defendant over the third party's means of infringement" and find "[d]irect control and monitoring of the instrumentality used by a third party to infringe the plaintiff's mark." *Lockheed Martin Corp. v. Network Solutions, Inc*., 194 F.3d 980, 984 (9th Cir.1999).

Temu allegedly induced infringement by instructing its manufacturers as to when and what to manufacture. SAC, ¶¶26-30,34,39. For example, Temu allegedly "directed" its suppliers "to copy" its competitor's "most popular products" and sell knock-off versions on Temu." *Roadget Business Pte. Ltd. v. PDD Holdings, Inc*., 2026 WL 44864, at *2 (D.D.C. 2026)(denying in part Temu's motion to dismiss); SAC, Ex. 7. The fact that Temu's sellers are supposedly "independent," which is highly disputed, does not preclude Temu from directing them as to what to manufacture. While Temu may disagree with these allegations, they suffice.

Temu also received notice of the infringement and continued to provide services and was otherwise willfully blind[7] to the fact that none of its purported "sellers" could lawfully sell MF DOOM merchandise. *See* SAC at ¶¶34, 57, 66, 71, 145-149. This creates a "plausible inference" that Temu "knew of a particular

---

[7] *See Omega SA v. 375 Canal, LLC*, 984 F.3d 244-45(2d Cir. 2021)(liability if defendant "had a history of turning a blind eye toward counterfeiting" and "had taken insufficient steps to root out the counterfeiting it knew or should have known was occurring.") Temu's conduct is allegedly worse.

[supplier's] infringing activities and yet continued to facilitate them." *BMW of N. Am.*, 2020 WL 10486758, at \*4–5 (citation omitted). That, coupled with allegations that Temu was "capable of removing [infringing] user[s] from its ... service" suffices to set forth a contributory infringement claim. *Id.*

### E. Drawls states a claim for vicarious trademark infringement

Drawls has sufficiently asserted that Temu and its suppliers "have an apparent or actual partnership, have authority to bind one another in transactions with third parties **or** exercise joint ownership or control over the infringing product." *Perfect 10*, 494 F.3d at 807 (internal quotation marks omitted; emphasis added). Temu meets all three bases: consumers see at least an apparent partnership with the vendors whose products Temu advertises; Temu binds its suppliers to sales on it site and app; and Temu and its suppliers exercise at least joint control over the contraband. SAC¶¶11,12,17-22,27-30,77,158-162,Ex.6.

The SAC asserts that Temu keeps an "iron grip" on its suppliers by firmly controlling every aspect of the manufacturing, pricing, shipping, and marketing of the products sold on its app/site, establishing at a minimum an apparent partnership, an ability to bind, and joint control of the contraband. SAC, ¶¶14,27-28,32,39,Ex.4.[8]

---

[8] Temu challenges the SAC's Ex.4 (Mot., pg.9), but the Temu notice advises customers that "we will be making price adjustments starting April 25, 2025[,]" "[w]e've stocked up and stand ready to make sure your orders arrive smoothly[,]" and is "[w]e're doing everything we can to keep prices low and minimize the

1    Temu also allegedly has "control such as to stop the infringing activity" but fails to

2    exercise same. *Mophie, Inc. v. Shah*, 2014 WL 10988339, at *4 (C.D.Cal. 2014).

3    This suffices.

4        **F.    Drawls adequately alleges unfair competition**

5          Drawl's unfair competition claims should proceed for the same reasons as its

6    trademark infringement claims. A claimant need not "describe in detail a single

7    specific transaction," or point to "the precise method" Defendant used to carry out

8    its malfeasance. *See Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997). Drawls

9    sufficiently alleged that Temu used the GD Marks to falsely convey an association

10    with MF DOOM and provided myriad exemplars of Temu's contraband. Drawls also

11    alleged economic loss, including that Temu's misconduct resulted in "diversion of

12    trade, loss of profits, and a dilution in the value of their rights and reputation." SAC,

13    ¶¶122,132.

14          Temu's authority establishes that Drawls' allegations are sufficient. In *Bragg*,

15    the court dismissed the claims because the plaintiff completely failed to allege any

16    economic injury whatsoever. *Bragg Live Food Prods., LLC. v. Nat'l Fruit Prod. Co.*,

17    2022 WL 3574423, at *2 (C.D.Cal. 2022). Not so here, where Drawls specifically

18    alleges economic injury by asserting that Temu's sales of cheap, competing, low-

19

20    impact on you." The "we" refers to Temu ("[o]ur team") and establishes its control
over pricing and product and makes clear that they hold, ship, and sell inventory.

quality infringing product caused it lost sales and profits.

### G.    Section 230 does not bar Drawls' state law claims

The Communications Decency Act ("CDA") does not apply to Temu because it only precludes liability for "content created by third parties" in limited circumstances. *Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1162 (9th Cir. 2008) (footnotes omitted). And the Temu listings and advertisement are not "information provided by another information content provider." 47 U.S.C. § 230(c). Crucially, immunity applies "only if the interactive computer service provider is not also an 'information content provider,' which is defined as someone who is 'responsible, in whole or in part, for the creation or development of' the offending content." *Id.* (citation omitted). Notably, a "website operator can be **both** a service provider and a content provider.... [A]s to content that it creates itself, or is 'responsible, in whole or in part' for creating or developing, the website is also a content provider." *Id.* And "if the platform's conduct materially alters the content, enhancing its alleged illegality, the tool is not neutral, and Section 230 does not bar liability. *Id.* at 1174–75 (if "the website directly participates in developing the alleged illegality ... immunity will be lost.").

Here, Drawls alleges that Temu is responsible*, at least in part*, for the infringing product listings, as Temu allegedly directs its suppliers as to when and what to make and Temu controls the listing and advertising thereof, as well as

pricing, and overall product control. As such, Temu allegedly materially alters the

listings, advertises the listings, distributes them to search engines and consumers

using search engines, all of which exceeds "neutral" participation. These allegations

preclude immunity under 230 for Temu.

Temu here also "transformed the character" of its suppliers' "words,

photographs, and actions into a commercial endorsement" that Temu then used

online and the CDA thus does not apply. *Fraley v. Facebook, Inc*., 830 F. Supp. 2d

785, 802–03 (N.D. Cal. 2011).

Finally, §230 has "[n]o effect on intellectual property." *Hepp v. Facebook*, 14

F.4th 204, 209 (3d Cir. 2021), quoting § 230(e)(2). Indeed, "[n]othing in [§ 230]

shall be construed to limit or expand any law pertaining to intellectual property." *Id.*,

citing *id*. This carveout applies to both federal and "state intellectual property law[.]"

*Id.* at 212. Drawls' claims relate to its trademarks and the CDA thus provides no

defense here. *Gucci Am., Inc. v. Hall & Assocs.,* 135 F. Supp. 2d 409, 413 (S.D.N.Y.

2001)(trademark case).

Temu's authority fails. The *Free Kick* court dismissed the claim only because

the plaintiff failed to make "any allegation" that the defendants "acted as an author"

or was otherwise culpable. *Free Kick Master LLC v. Apple Inc.*, 140 F. Supp. 3d

975, 983 (N.D.Cal. 2015). Not so here. Drawls specifically alleges Temu created

and controlled the infringing content by adding infringing code to its website;

1   creating and delivering content to search engines; promoting, encouraging, and

2   assisting the infringing sales and displays on Temu's website, while having notice

3   of the infringement. *See, e.g.,* SAC, ¶¶33,35,49,73-75. And in *Perfect 10* the plaintiff

4   did not dispute the defendant's status as a passive service provider. *See Perfect 10,*

5   *Inc. v. Giganews, Inc.*, 2013 WL 2109963, at *15 (C.D.Cal. 2013). Drawls plainly

6   does.

7   **H.    PDDH is a proper Defendant**

8   The Court granted Drawls leave to amend the complaint and Temu was aware

9   of Drawls' allegations regarding PDDH and its control of Temu and the supplier

10   network. *See, e.g.,* SAC, ¶¶23,36,Ex.9. PDDH and Temu are affiliated companies

11   with common ownership. Drawls' counsel reasonably interpreted the order allowing

12   amendment to allow for amendment, including as to the named parties, and no

13   prejudice has been shown. PDDH is a proper Defendant.

14   **I.    The SAC's allegations establish a plausible pattern and practice**

15   Temu challenges the allegations because they address Temu's business in

16   general as opposed to the specific contraband at issue but the allegations establish a

17   plausible pattern and practice of use of infringing marks in commerce. And

18   "[e]vidence [] of the routine practice of an organization," can "prove that the

19   conduct of the [] organization on a particular occasion was in conformity with the

20   [] routine practice." Fed.R.Evid 406. "Courts generally apply a more liberal

standard to evidence of office routine than they apply to evidence of personal habit[.]" *Westport Ins. v. Ray Quinney & Nebeker*, 2010 WL 2521460, at *3 (D.Utah 2010)(citation omitted), quoting Am. Jur 2d Evidence § 403. Here, the SAC plausibly alleges Temu's routine practices and that Temu acted in conformity with those practices here.

### J. Temu does not challenge the contributory or vicarious counterfeiting claims

Contributory and vicarious counterfeiting claims are distinct from those for infringement and should be sustained here if "confusion could have resulted because the products on [Temu's] website bearing the [GD Marks] are the kinds of trademarked goods [Drawls] sells." *Y.Y.G.M. SA v. Redbubble, Inc.*, 75 F.4th 995, 1004 (9th Cir. 2023). Temu does not dispute that the product bearing the GD Marks appeared on its website and does not challenge these counterfeiting claims.

### IV. Temu's authority is unpersuasive and establishes that this dispute is inappropriate for Rule 12 dismissal

Temu cites cases with distinguishable facts and holdings. Tellingly, these cases, like most in this area, were each decided at the summary judgment or trial stages, establishing that dismissal here would be premature. Allowing discovery on the alleged infringer's business practices and involvement with the infringing products at issue is necessary given the opacity of Temu's business model.

*Spy Optic* assists. There, one of Temu's competitors, Alibaba.com, similarly argued that it "does not sell or offer for sale any products on its websites .... [but] merely provides a platform for sellers and consumers to connect." *Spy,* 163 F. Supp. 3d at 765. The court rejected Alibaba.com's argument, confirming that such claims are "legal defenses" that the Court need not consider at the motion to dismiss stage, where the only concern is "whether the Plaintiff's allegations, taken as true, sufficiently state a claim for Plaintiff's various causes of action." *Id.* So true here.

The cited *Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93, 101 (2d Cir. 2010) case went to trial. Even then, eBay's "third party" seller defense did not apply to its direct use of Tiffany's' mark on its website links; instead the court found no liability because eBay's platform sold *genuine* Tiffany's products. *Id.* Here, the products are counterfeit. And, eBay does not ship the products that third-parties list for auction on its site. *Tiffany* is distinguishable.

The *Redbubble* cases also advanced beyond this stage and one went to trial. On appeal, the court held that "[o]nce a defendant knows about specific instances of infringement," an infringer must show a "bona fide efforts to root out infringement" to potentially avoid contributory liability. *Y.Y.G.M. SA*, 75 F.4th at 1003.

And *Tre Milano, LLC v. Amazon.Com, Inc.*, 2012 WL 3594380, at *6 (Cal.Ct.App. 2012) addressed a preliminary injunction request that required all inferences to be drawn in the defendant's favor. Not so here.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Finally, none of the cases cited fully address Drawls' argument that Temu's transport of the goods constitutes use in commerce or that Temu's use of the marks to advertise its own app and site suffice for use in commerce.

## V.    This motion fails

Temu, which categorically controls and oversees the advertising, sale and transport of a massive number of infringing items, cannot be given blanket immunity for infringement. Temu attempts to evade liability via covert surveillance of Drawls' counsel and an opaque, convoluted business model constructed solely to exploit U.S. intellectual property without having to answer for infringement claims in U.S. courts. This cannot stand and this motion should be denied.

Respectfully submitted,

Date: January 9, 2026          By:    */s/ Scott Alan Burroughs*
                                      Scott Alan Burroughs, Esq.
                                      Andres Navarro, Esq.
                                      DONIGER / BURROUGHS
                                      Attorneys for Plaintiff

## Word Count Certification

The undersigned, counsel of record for Plaintiff, certifies that this brief contains 6,983 words, which is less than the 7,000 limit set forth in the Court's Individual Rules and thus complies with the word limit of L.R. 11-6.1 and this Court's Standing Order.

Date: January 9, 2026          By:    */s/ Scott Alan Burroughs*
                                      Scott Alan Burroughs, Esq.