| | |
|---|---|
| 1 | Jeffrey S. Gluck (SBN 304555) |
| | jeff@gluckip.com |
| 2 | **GLUCK LAW FIRM** |
| | 16950 Via De Santa Fe |
| 3 | Rancho Santa Fe, California 92067 |
| | Telephone: (310) 776-7413 |
| 4 | |
| | Scott Alan Burroughs (SBN 235718) |
| 5 | scott@donigerlawfirm.com |
| | Andres Navarro (SBN 358499) |
| 6 | anavarro@donigerlawfirm.com |
| | **DONIGER / BURROUGHS** |
| 7 | 603 Rose Avenue |
| | Venice, California 90291 |
| 8 | Telephone: (310) 590-1820 |
| | Attorneys for Plaintiff |

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GAS DRAWLS, LLC, | Case No.: 2:25-cv-07425-SB-BFM |
| Plaintiff, | **[DISCOVERY MATTER]** |
| v. | **PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR SPOLIATION AND OTHER DISCOVERY SANCTIONS** |
| WHALECO, INC.; et al., | |
| Defendants. | Hearing Date: March 12, 2026 |
| | Time: 11:00 a.m. |
| | Courtroom: 6C |
| | Before the Honorable Brianna Fuller Mircheff |

- i -

**TO THE HONORABLE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on March 12, 2026, or as soon thereafter as this Court is available to hear this matter, Plaintiff Gas Drawls, LLC ("GD") will and hereby does move, pursuant to Fed. R. Civ. P. 26, 33-34, and 36-37, and Civil L.R. 37, for discovery sanctions against Whaleco, Inc. for its willful destruction of relevant evidence and unlawful surreptitious digital monitoring of opposing counsel's devices.

GD's motion is based on the accompanying memorandum, the Declarations of Scott Alan Burroughs, Esq. and Jeffrey S. Gluck, Esq. in support of the motion, the record in this case, and such other evidence and argument that may be presented to the Court at hearing. This motion follows counsels' Civil L.R. 37-1 meet-and-confer, which was completed February 20, 2026 Burroughs Decl. 2.

          Respectfully submitted,

Date: February 25, 2026    By:  */s/ Scott Alan Burroughs*
                                          Scott Alan Burroughs, Esq.
                                          Andres Navarro, Esq.
                                          DONIGER / BURROUGHS

                          By:  */s/ Jeffrey S. Gluck*
                                          Jeffrey S. Gluck, Esq.
                                          GLUCK LAW FIRM
                                          Attorneys for Plainti

## I. Introduction

Defendant Whaleco, Inc., which does business as "Temu" (collectively "Temu") must be sanctioned. Gas Drawls, LLC ("GD") initiated this suit against Temu after discovering Temu offering for sale a massive number of counterfeit products that unlawfully bore certain trademarks registered to and owned by GD ("GD Marks"). Temu is a notorious infringer, counterfeiter, malware hacker, and personal data thief. Its proprietary online application (or "app") allegedly "infect[s] users' devices with malware to steal their private data while carefully hiding its tracks."[1] It is under investigation by multiple state Attorneys General for, *inter alia*, "unlawfully deceiving consumers while covertly harvesting [their] personal data and exposing it to the Chinese Communist Party ("CCP")."[2]

Here, Temu secretly surveilled GD's counsel as he investigated Temu's website, and then pre-emptively destroyed and forever deleted the product listing pages for items he reviewed. Temu did so without any notice to GD, its counsel, or anyone outside of Temu. When GD's counsel returned to Temu's site to capture additional evidence and make test purchases, he discovered that the products he investigated were now inexplicably deleted from Temu's website. He was alarmed as he had not advised Temu of his ongoing investigation related to this client. Without knowing that Mr. Gluck even

---

[1] https://www.azag.gov/press-release/attorney-general-mayes-sues-online-shopping-platform-temu-stealing-arizonans-data-and
[2] https://www.texasattorneygeneral.gov/news/releases/attorney-general-ken-paxton-files-fourth-anti-ccp-lawsuit-three-days-suing-temu-deceptive-marketing

represented GD, Temu began deleting these product listings shortly after Mr. Gluck viewed them on Temu's website, which was *months before* anyone notified them about the existence of these claims. This process of secret surveillance, tracking, and evidence destruction continued and repeated itself even *after* this litigation was filed. Temu sought to exploit its evidence destruction by complaining to this Court in its Motion to Dismiss that GD did not include the URLs and product listing pages in its complaint. And throughout discovery Temu has denied tracking GD's counsel and destroying evidence. During the Informal Discovery Conference ("IDC"), the Court noted that the URLs and product listing pages seemed to be in the "heartland" of relevant evidence. Yet, Temu has refused to produce them and refused to admit it destroyed them.

### III. Legal standard and argument

Rule 37(e) governs the failure to preserve electronically stored information ("ESI") and holds that if ESI "that should have been preserved" is "lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery," the court "may issue sanctions to cure the prejudice or issue more severe sanctions if the spoliation was with intent." A district court also has inherent authority to impose sanctions for evidence spoliation. *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006). GD's sanctions motion should be granted because Temu engaged in massive, willful spoliation and thereafter attempted to cover up the malfeasance. Temu, under investigation for malware, consumer surveillance, and the

1  sensitive consumer data theft, surveilled GD' counsel as he investigated Temu's website
2  both before and after this lawsuit's filing. It then willfully destroyed crucial evidence.
3    Temu secretly monitored Mr. Gluck, whom Temu knew well from prior
4  disputes, and his law firm computer, as he investigated Temu. Gluck Decl. 1-5. He
5  navigated to Temu's website in February of 2025 and visited numerous Temu URLs
6  and product listings pages for MF DOOM products, viewed thousands of Temu items
7  bearing Drawls' marks, took screenshots, and ran product searches onTemu.com for
8  MF DOOM products. *Id.* at 2-5. A screenshot from that investigation, showing
9  numerous counterfeit MF DOOM products and dated February 11, 2025 is set forth in
10 the Gluck Declaration, as are representative examples of the products viewed. *Id*. at
11 3,15; **Ex. C**. When Mr. Gluck returned to those pages to capture additional product
12 listings and make test buys, he discovered that URLs and product listings he had
13 viewed or searched for had been deleted. *Id.* at 6-9. For example, in February 2025, he
14 ran one search on Temu for MF DOOM products and received thousands of products
15 in the results. *Id.* When he returned in March 2025 and ran that same search, he
16 received no results. *Id.* Temu deleted one listing on February 17, 2025, *less than a*
17 *week* after Temu monitored Mr. Gluck's investigation. See Gluck Decl. 15, **Ex. E**.
18    Even *after* this case's filing, Mr. Gluck investigated Temu's site and viewed
19 additional infringing listings using other keywords, and after promptly returning to
20 capture the evidence each time he found the product listings and search results
21 inexplicably deleted. *Id.* at 12-13, **Exs. A-B**. This prompt deletion of a massive volume

1  of infringing product listings soon after each of Mr. Gluck's visits can only be
2  explained by Temu's surveillance of Mr. Gluck's online activity. *Id.* at 15.
3        Temu and its counsel deny the above and repeatedly advised the Court and
4  counsel that it did not monitor Mr. Gluck or destroy evidence, including in its Motion
5  to Dismiss reply, where it noted such claims were "untrue" and "illogical." *See*
6  Burroughs Decl. 3, **Ex. D**. But smoking-gun evidence that Temu produced only after
7  the spoliation issue was raised at the recent IDC unequivocally proves that Temu
8  surveilled Mr. Gluck and defrauded this Court. The evidence now establishes that
9  Temu did indeed destroy the infringing product listings beginning in *March of 2025*,
10 just weeks after Mr. Gluck began his investigation and several months before GD
11 served Temu notice of claims. Burroughs Decl. 4; **Ex. E (under seal);** Gluck Decl. 10.
12 Temu now also concedes that it deleted additional relevant product listings in in April
13 and May of 2025, still well before Temu had notice. *Id.* Temu's new evidence also
14 states that the product listings were deleted as a result of vague infringement
15 takedown-notices. But Temu has not produced copies of any such notices or even any
16 identifying information about who sent the notices. *Id.* And the basis for some of the
17 evidence deletions is simply left blank. *Id.* Finally, Temu's evidence established that
18 they destroyed and deleted the remainder of the URLs and product listings for the
19 items at issue in August of 2025, just before the complaint was filed in this case. *Id.*
20 All product listing deletions other than the August 2025 deletions were *months* before
21

1  GD or its counsel advised Temu of the infringement claims. Thus, the unlawful
2  surveillance is the only explanation for the deletions.
3      Spoliation exists when the charged party had a "culpable" mindset as well as
4  control and an "obligation to preserve" any "relevant" evidence. *Apple Inc. v. Samsung*
5  *Elecs. Co.*, 881 F. Supp. 2d 1132, 1138 (N.D. Cal. 2012). Temu had control over the
6  product listings and an obligation to preserve same, yet knowingly said evidence,
7  which is at the "heartland" of this case, as it includes crucial details relating to the
8  disputed products and Temu's involvement with same, including whether Temu
9  "procured" the products on offer.
10     Temu's destruction of ESI evidence is also sanctionable under Rule 37. If ESI
11 "is lost because a party failed to take reasonable steps to preserve it, and it cannot be
12 restored or replaced through additional discovery," and willfulness is shown, severe
13 sanctions should issue. Fed. R. Civ. P. 37(e). If the spoliating party acted with the
14 intent and lesser sanctions are insufficient, *default* can be entered. *Jones v. Riot Hosp.*
15 *Grp. LLC*, 95 F.4th 730, 735 (9th Cir. 2024). Relevant intent considerations include the
16 timing of destruction, affirmative steps taken to delete evidence, and selective
17 preservation. *Id.* at 735. Here, the timing of Temu's destruction – soon after counsel
18 was monitored investigating the evidence and soon before litigation commenced –
19 reflects willful intent. As does the affirmative steps taken to delete the product listings
20 and failure to preserve any file or server copies. Finally, Temu's preservation was
21 selective as it did not preserve any of the product listings that included details as to the

products and Temu's advertising of and involvement with the product, yet Temu preserved other information such as vendor identification and certain product photographs. This type of selective preservation reveals that Temu "bleached" portions of the evidence, while preserving other self-serving details.

And spoliation is willful if the party has "some notice that the documents were potentially relevant to the litigation before they were destroyed." *United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1001 (9th Cir.2002). Notably, "a duty to preserve ESI can arise far in advance of the formal retention of a lawyer or the filing of a lawsuit." *RG Abrams Ins. v. L. Offs. of C.R. Abrams*, 342 F.R.D. 461, 504 (C.D. Cal. 2022), citing *Fast v. GoDaddy.com LLC*, 340 F.R.D. 326, 337 (2022) (gathering cases holding same). Given that Mr. Gluck, who had been involved in multiple other prior trademark disputes involving Temu over the years, was reviewing the MF DOOM evidence, there is no doubt that Temu knew that it was relevant to potential litigation. Temu had a duty to preserve the product listings yet took steps to delete same, doing so "knowingly," which constitutes spoliation, even if it did so "without intent to breach a duty to preserve it, or negligently." *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 108 (2d Cir. 2002) (cleaned up; emphasis omitted); see *Miranda v. Wyatt*, 677 F. App'x 432, 432–33 (9th Cir. 2017). Here, Temu knew that Mr. Gluck was routinely investigating potential claims against Temu yet closely tracked his movements on its site and then deleted everything he investigated. This was spoliation as a matter of law because Temu had "some notice that the documents were potentially

relevant to the litigation before they were destroyed." *JUUL Labs, Inc. v. Chou*, 676 F. Supp. 3d 827, 842 (C.D. Cal. 2023)(citation omitted).

And the evidence destroyed is highly relevant because GD must prove that Temu marketed, promoted, offered for sale, sold, and/or transported the infringing items at issue, or otherwise exercised control over their sale and transportation. Moreover, because "the relevance of ... [destroyed] documents cannot be clearly ascertained because the documents no longer exist," Temu "can hardly assert any presumption of irrelevance as to the destroyed documents." *Alexander v. Nat'l Farmers Org.*, 687 F.2d 1173, 1205 (8th Cir.1982). The product listings that Temu deleted would establish Temu's involvement with the items and that they bore infringing trademarks and provide details as to the supposed sellers of the products. Because the product listing details and supplier/seller data are at the crux of an infringement case, courts regularly find the products to be highly relevant. *See R.F.M.A.S., Inc. v. So*, 271 F.R.D. 13, 32–33 (S.D.N.Y.), opinion adopted, 271 F.R.D. 55 (S.D.N.Y. 2010)("infringer had duty to "preserve one exemplar of each of the allegedly infringing pieces, at least for a sufficient time to permit its inspection by plaintiff.") (citation omitted). Temu destroyed the only evidence of the infringing product listings before *and during* litigation, soon after counsel reviewed same. Temu's willful destruction thus prejudiced GD by denying it the opportunity to capture that evidence and make test buys of the product.

Severe sanctions are thus proper. The three applicable factors are: (a) "the degree of fault"; (2) "the degree of prejudice"; and (3) whether "a lesser sanction that will avoid substantial unfairness to the opposing party." *Nursing Home Pension Fund v. Oracle Corp.*, 254 F.R.D. 559, 563 (N.D. Cal. 2008)(citation omitted). And for ESI spoliation, if "the party acted with the intent" the court may: "(A) presume that the lost information was unfavorable to the party; (B) instruct the jury that it may or must presume the information was unfavorable to the party; or (C) dismiss the action or enter a default judgment." Fed. R. Civ. P. 37(e)(2). And "courts should not shrink from imposing harsh sanctions where they are clearly warranted." *Jones v. Niagara Frontier Transp. Auth.*, 836 F.2d 731, 735 (2d Cir.1987); see *also Cine Forty–Second Street Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1068–69 (2d Cir.1979) (dismissal is particularly appropriate when client is responsible for misconduct). Relevant here, "[l]esser sanctions have been found to be ill-suited to cases involving bad faith irretrievable spoliation of likely important documents." *Arista Recs. LLC v. Usenet.com, Inc.*, 633 F. Supp. 2d 124, 138–39 (S.D.N.Y. 2009)(citation omitted). Temu's misconduct warrants severe sanction, as it was willful, in bad faith, and meant to *permanently* deprive GD and counsel of evidence crucial to this federal litigation. Temu must be deterred from secretly surveilling adverse counsel and destroying evidence and thereafter defrauding the court regarding such misconduct.

Temu's conduct was far more willful than in any of the reported cases due to two extra elements: its invasive illegal surveillance of Mr. Gluck and its attempt to

cover-up the surveillance and spoliation. As a result, no sanction less than the striking of Temu's answer and entry of default will suffice. *See* Fed. R. Civ. P. 37(e)(2). Courts do not hesitate to enter terminating sanctions when a party deletes ESI and that deletion "threaten[s] to distort the resolution" of the case. *Leon*, 464 F.3d at 960 (terminating case for ESI deletion). So true here.

In the alternative, the Court should enter issue preclusion and find Temu liable for the products that it offers for sale on its site. This sanction directs the court and parties to take certain facts "as established for the purposes of the action" and is proper for "extreme and prejudicial" discovery abuse. Fed. R. Civ. P. 37(b)(2)(A)(i); *Brighton Collectibles, Inc. v. RK Texas Leather Mfg.*, 2013 WL 4716210, at *1 (S.D. Cal. 2013)(citation omitted) Here, Temu has deleted the very product listings that provide details about the disputed products and Temu's involvement in connection with the obtainment, promotion, marketing, and sale of same. Those listings also include details about the supposed "suppliers." Temu has also deleted its promotional material for the disputed product. Finding Temu liable for the disputed products is thus appropriate.

An adverse inference instruction is also proper.[3] Courts may "permit a jury to draw an adverse inference" against a spoliating party if there was "simple notice" of

---

[3] When an infringer "delisted" the infringing product listings when it received notice of the lawsuit, keeping only a "single shot of a webpage" the court exercised its inherent power to "presume the missing information was unfavorable to" the infringer. *JUUL Labs, Inc.*, 676 F. Supp. 3d at, 842; *see also Sekisui Am. Corp. v. Hart*, 945 F.Supp.2d 494, 504 (S.D.N.Y.2013) (for willful destruction, courts presume relevance).

the evidence's "potential relevance to the litigation," with no bad faith requirement. *Akiona v. United States*, 938 F.2d 158, 161 (9th Cir. 1991). Temu's unsavory business practices, allegations of spying on consumers, and attempted cover-up here further establishes the need for severe sanctions. See *Arista Records, LLC v. Tschirhart*, 241 F.R.D. 462 (W.D.Tex.2006).[4] Such an inference instruction is needed here.

Finally, monetary sanctions should be levied in an amount to be set upon completion of briefing, per Rule 37 and the Court's inherent power. See *Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 648 (9th Cir.1997) (court may attorneys' fees against a party or counsel who acts "in bad faith, vexatiously, wantonly, or for oppressive reasons.")

**IV.   Conclusion**

In light of the above, GD respectfully requests that sanctions issue in the form of striking Temu's answer and entering default; finding through issue preclusion or an adverse inference that Temu procured, offered to sell, sold, distributed, and advertised the product at issue and is otherwise liable for their sale; enter an order allowing GD's forensic computer technician to investigate, review and copy the relevant Temu system files and source code to ascertain when, how, and who destroyed the evidence at issue; issue monetary sanctions; and enter any relief found suitable by the Court.

---

[4] ("One who anticipates that compliance with discovery rules and the resulting production of damning evidence will produce an adverse judgment, will not likely be deterred from destroying that decisive evidence by any sanction less than the adverse judgment she is tempted to thus evade.").

Respectfully submitted,

Date: February 25, 2026    By:   /s/ Scott Alan Burroughs
Scott Alan Burroughs, Esq.
Andres Navarro, Esq.
DONIGER / BURROUGHS
Attorneys for Plaintiff

By:   /s/ Jeffrey S. Gluck
Jeffrey S. Gluck, Esq.
GLUCK LAW FIRM
Attorneys for Plaintiff

**Length Certification**

The undersigned, counsel of record for Plaintiff, certifies that this brief is 10 pages or fewer, in compliance with this Court's Standing Order.

Date: February 25, 2026    By:   /s/ Scott Alan Burroughs
Scott Alan Burroughs, Esq.